IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

|  |  |
|---|---|
| Selena Nelson,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Beaufort County Sheriff's Office,<br>Lieutenant Brian Baird, and Sheriff P.J.<br>Tanner, *individually and in their official*<br>*capacity,*<br><br>　　　　　Defendants. | C/A NO.:　9:18-CV-2962-DCN-BM<br><br><br>COMPLAINT<br>(Jury Trial Requested) |

Plaintiff, Selena Nelson, alleges and shows unto this Honorable Court the following:

**<u>NATURE OF CLAIMS</u>**

1.　　　This is an action under Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e-5). The Defendants intentionally discriminated against Plaintiff based on her sexual orientation, her failure to conform to female gender stereotypes, and her race.

2.　　　This action is brought by Plaintiff, a black woman who was employed by the Defendants as a Sheriff's Deputy for over fourteen (14) years. The Defendants intentionally discriminated against Plaintiff due to her race by terminating her and, thus, denying her equal terms and conditions of employment as white male deputies, as required by 42 U.S.C. § 1981.

3.　　　The Defendants misused their authority granted to them under state law, to deprive Plaintiff of her constitutional rights, because they treated her differently from other similarly situated white deputies, and deprived her of due process, both in violation of 42 U.S.C. § 1983.

4.     The Plaintiff also brings a state law claim for defamation, because the Defendants made and caused to be widely published false statements that were intended to impeach Plaintiff's honesty, integrity, virtue, and reputation.

**PARTIES, JURISDICTION AND VENUE**

5.     Plaintiff, Selena Nelson, is a citizen and a resident of Beaufort County, South Carolina.

6.     Defendant Sheriff P.J Tanner is a white male. He is an elected official, who serves as the chief law enforcement officer in Beaufort County. Sheriff Tanner has the authority to make final policy as well as the authority to make final implementing decisions for the Sheriff's Office. Sheriff Tanner's acts and policy are not subject to review by County Council.

7.     Sheriff P.J Tanner has final authority over all personnel matters at Beaufort County Sheriff's Office. This includes the power to hire, fire and discipline employees. His decisions regarding these matters are not subject to review.

8.     Defendant Sheriff P.J. Tanner is liable in his individual and official capacity for violating Plaintiff's constitutional rights. The actions of Sheriff Tanner reflect the policy of the Beaufort County with respect to the employment of sheriff deputies such as the Plaintiff.

9.     Defendant, Lieutenant Brian Baird, (Lt Baird) is the officer in charge of the Professional Standards Division also referred to Internal Affairs. Lt Baird is liable because he exercised power he possessed by state law, to violate Plaintiff's constitutional rights. Lt. Baird directly participated in discrimination against Plaintiff.

10.     Venue is proper in this District because the Defendant has conducted substantial, continuous, and systematic governmental activities within the Beaufort County Division of this

Court. Additionally, the constitutional violations giving rise to Plaintiff's claims were, for the most part, committed within this Division of the Court.

11.     Within 300 days of the unlawful employment practices complained of here, Plaintiff filed a Charge with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 14C-2018-00342, which issued to her a Notice of Suit Rights letter dated August 3, 2018. (Exhibit 1)

12.     Plaintiff has timely filed this action within ninety (90) days of the date of her Notice of the Right to Sue letter from the EEOC.

13.     This Court has jurisdiction of the claims alleged herein pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1981 and 1983.

14.     This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367 over Plaintiff's pendent claims, which are brought pursuant to the statutory and common law of the State of South Carolina. The pendent claims arise out of the same transaction or occurrence as the federal claims alleged here.

## FACTS

15.     Selena Nelson (Ms. Nelson) is a black female. Ms. Nelson is a lesbian. Although Ms. Nelson's gender identity is that of a woman, her appearance, manner of dress, and mannerisms are more stereotypically characteristic of a man.

16.     Ms. Nelson does not wear make-up, jewelry or shoes that would be commonly associated with women.

17.     Ms. Nelson dresses in men's pants, shirts and shoes.

18.     Ms. Nelson is frequently mistaken for a man and referred to as "sir" especially when she is performing official duties with the Beaufort County Sheriff's Office.

19.     The other deputies at the Sheriff's Office refer to Ms. Nelson as a "female stud."

20. Ms. Nelson has heard her male colleagues say that they don't need to worry about her complaining of sexual harassment against them because she is a female stud.

21. Plaintiff does not conform to gender stereotypes and norms regarding women.

22. Plaintiff was employed as a Sheriff Deputy with Beaufort County Sheriff's Office from March of 2004 until she was terminated on August 10, 2017.

23. Plaintiff's primary job responsibilities were to enforce local and state laws, as well provide protective service for the citizens of Beaufort County.

24. Deputy Nelson was a good and valuable employee, who always met or exceeded her employer's reasonable expectations for job performance and conduct. Throughout her tenure, Plaintiff's reviews and evaluation were always above satisfaction.

25. Deputy Nelson earned promotions as well as numerous commendations, including praise for satisfactorily supervising a double murder investigation. She was also responsible for and received praise for physically tackling and capturing bank robber David Boyd. Prior to her termination, Plaintiff had a long and distinguished career at Beaufort County.

26. Plaintiff had an employment contract with Defendants, whereby the Defendants agreed to pay her an hourly wage for all hours worked.

27. Plaintiff and Defendant had a contract for permanent employment, which was terminable at the pleasure of either party.

28. Plaintiff was the subject of a citizen complaint arising out of an incident that occurred when she was off-duty but in uniform on July 31, 2017. The complaint, which was communicated electronically to the Sheriff's Department, alleged that Plaintiff had bullied a store clerk, Tyler Weaver, at the Oreck Store in Bluffton, SC. The complaint was rife with racial overtones, including Weaver accusing Plaintiff of acting "thug like" while in the store.

29.     Upon information and belief, citizen complaints about law enforcement officers are not uncommon and are routinely investigated through officers assigned to the Internal Affairs division at the Sheriff's Office.

30.     In response to the citizen complaint, Plaintiff was interviewed by Lt Baird regarding the incident of July 31, 2017, on August 8 and 9, 2017. The August 8 interview lasted roughly four hours.

31.     During her interview, Plaintiff gave a true and accurate report of the incident to the best of her recollection; to wit:

    a.  Plaintiff arrived at the Oreck store expecting to exchange a defective air purifier for a new model of the same type or receive a refund, having discussed the same with store manager Lindsay Vargas, after having dropped the defective air purifier off at the store on an earlier date.

    b.  The store clerk on duty, Tyler Weaver, tried to give Plaintiff the defective air purifier she had previously returned, claiming to have repaired it.

    c.  Plaintiff respectfully declined to accept the repaired air purifier and insisted on either a new air purifier or a refund.

    d.  Weaver told her there was no new model available for exchange and again tried to return the repaired item to her.

    e.  Again, Plaintiff declined and asked for a refund.

    f.  Weaver, who has been profiled in the local newspaper, the Island Packet, for his interest and skill in repairing vacuum cleaners,[1] was apparently offended by Plaintiff's refusal to accept the repaired machine.

---

[1] Wade Livingston, "Why this man's Bluffton job doesn't suck, even when it should. And does." The Island Packet (August 18, 2017) Available at https://www.islandpacket.com/news/local/article167924997.html

g. Rather than quickly processing the refund, Weaver claimed to be unable to provide a refund unless Plaintiff presented her debit card, which Plaintiff was not carrying on her person on that day.

h. Plaintiff explained to Weaver that she had bought two units on two different dates, one with cash and one with a debit card, and she requested he provide a cash refund.

i. Weaver continued to insist on a debit card, and Plaintiff suggested they call the store manager, whose phone number Plaintiff had been given previously.

j. While Plaintiff was on the phone with the store manager, Weaver contacted the store owner.

k. Ultimately, Weaver was directed to provide the refund, and Plaintiff left the store without further incident.

l. There were no other employees or customers in the store, but Plaintiff communicated with both the manager and owner via telephone before leaving the store.

32. Defendants conducted an internal affairs investigation that was sloppy and incomplete:

a. Defendants never obtained an interview of Tyler Weaver other than by phone;

b. Defendants accepted an email from a woman, Emma Lipinski claiming to be a witness to the incident, and apparently credited her account as true, although a cursory search would have revealed to Defendants that Emma Lipinski is actually Weaver's mother, who was neither present for the incident nor disinterested in the dispute.

c. Lipinski never responded to Defendants' telephone calls, and upon information and belief, Defendants made no attempt to interview either Weaver or Lipinski in person.

    d.   Defendants interviewed both the store owner and manager via telephone, and both corroborated Plaintiff's account of the encounter.

33.    Instead of conducting any meaningful investigation, Defendants used the spurious and unsupported customer complaint as a pretext to "investigate" and ultimately terminate Plaintiff. Indeed, rather than compiling the totality of the information obtained from the interviews, Defendants' official Internal Affairs report of investigation is silent as to the accounts of the store owner and manager. Instead, Defendants used the only differing accounts of the July 31 incident — the initial complaint and the apparently fraudulent follow-up email—as a pretext to subject Plaintiff to a polygraph examination and to challenge her character for truthfulness.

34.    On August 9, 2017, having conducted no meaningful investigation, Plaintiff was ordered to take a polygraph examination, to be administered by Mathew Averil. Upon information and belief, Lt Baird oversaw the polygraph examination, directed the questions to be asked, and scored the examination himself.

35.    Upon information and belief, numerous "best practices" in polygraphy were ignored during the conduct of the examination, including the introduction of Lt Baird's name into the interview, which, in light of the emotionally charged nature of his four-hour interview of her a day earlier, renders the results unreliable and suspect.

36.    Ultimately, Lt Baird determined, per his scoring of the polygraph charts, that Plaintiff had been dishonest when she denied having cursed at the complainant during the July 31 encounter.[2] Upon information and belief, no secondary review of the charts was conducted.

---

[2] At the conclusion of the polygraph, Plaintiff recalled in passing having made a joking comment to the store manager during their phone conversation complimenting her by saying she had "sold her ass off" when she was able to get Plaintiff to buy not one, but two, expensive air purifiers.

37.     Defendant Lt Baird recommended that Defendant Sheriff P.J. Tanner terminate Plaintiff.  On August 10, 2017, Defendant Sheriff P.J. Tanner terminated Plaintiff.

38.      Plaintiff's separation of employment was reported on a Personnel Change in Status Report (PCS) to the Criminal Justice Academy, (Academy), as required by state law.

39.     Pursuant to S.C. Code Ann. § 23-23-150(B), the sheriff or the chief executive officer of a law enforcement agency or department must report to the academy any acts of misconduct which could result in the withdrawal of the certification of the law enforcement officer.

40.     The type of misconduct which could result in the withdrawal of the certification is defined in state statutes and regulations.

41.     The PCS form also allows a sheriff or executive officer to report the separation of employment in any number of ways in which the Academy will not suspend the certification of a law enforcement officer. For example, the separation can be reported as resignation, or a termination of agency policy not involving misconduct as defined in state statutes and regulations.

42.     Plaintiff did not commit misconduct as defined by the relevant state statutes and regulations.

43.     Nonetheless, Sheriff P.J. Tanner reported Plaintiff's termination on the PCS as being due to "misconduct," defined by the relevant state statutes and regulations. As a result, Plaintiff's law enforcement certificate was suspended, and she sought review of the suspension via the appropriate administrative remedies.

44.     Defendants' termination of Plaintiff as well as the PCS they submitted to the Academy, give rise to an inference of race and sex discrimination - namely, Defendants did not terminate similarly situated Caucasian/white males who engaged in more egregious behavior.

45. It was well established at the time of Sheriff P.J. Tanner's actions that the Equal Protection Clause prohibited him from treating Plaintiff differently from others with whom she is similarly situated.

46. Defendants did not terminate the employment of nor submit PCS forms requesting the Academy withdrawal certification for Caucasian/male officers who committed more egregious misconduct than Plaintiff was alleged to have committed. To wit, the following is an inexhaustive list:

    a. Defendants have not terminated Lt Baird, a white male, who, upon information and belief forged a college diploma, which he hung on his office wall, so that he would receive a 3% increase in pay. Upon information and belief, Lt. Baird also had an extramarital affair with another deputy's wife. Lt Baird was not terminated or formally disciplined in regard to theses alleged acts of dishonesty or unbecoming conduct. In fact, Lt Baird oversees the Office of Professional Responsibility which is responsible for investigating misconduct within the department.

    b. The personnel file of Deputy Stuart Mankin, a white male, contains five (5) Disciplinary Action Forms. Upon information and belief, he was disciplined for a verbal dispute with his neighbor. The neighbor reported to Defendants that Deputy Stuart Mankin committed misconduct. Deputy Mankin also received discipline, but was not terminated, when it was discovered that he was taking suspects' driver license and licenses plates to put on a bulletin board in his garage.

    c. Upon information and belief, Deputy Christopher Capps, who is a white male, set traps for his neighbor's cats and released them in a secluded area far from his home. Deputy Capps was not terminated regarding the alleged violation of policy.

d. Upon information and belief, Deputy James Prusinowski, who is a white male, was arrested for criminal domestic violence, along with his wife, who was said by investigating officers to have had noticeable bruising. Deputy Prusinowski was not terminated nor formally disciplined in regard to the alleged violation of policy. Upon information and belief, in an earlier incident in 2012, Prusinowski was accused of assaulting his wife; although a disciplinary action sheet does not detail the circumstances, it notes "Prusinowski's blatant attempt to mislead his supervisor," in ordering him to six months of probation. Prusinowski's disciplinary record includes no fewer than four disciplinary action forms, none of which resulted in termination.

e. Upon information and belief, Deputy Richard Roper, who is a white male, never reported when his service weapon went missing. The weapon was later recovered during a drug investigation in a suspect's home. Deputy Roper was not terminated regarding the alleged violation of policy. Defendants placed a Disciplinary Action Form in Deputy Roper's personnel file.

f. Upon information and belief, Deputy Chief Michael Hatfield, who is a white male, had his service weapon stolen from his unmarked patrol car when he had left it unlocked. Per policy, an officer's weapon should be secured in a locked box in the vehicle. Additionally, Deputy Hatfield did not timely report the missing weapon. He was not terminated regarding these alleged violations of policy.

g. Upon information and belief, Deputy Patrick O'Neil, who is a white male, had a complaint filed against him by a woman, who alleged he had sex with her on duty. Deputy O'Neil was not terminated or formally disciplined in regard to the alleged violation of policy.

47.     The unequal treatment was the result of intentional or purposeful discrimination by Sheriff P.J. Tanner's and Lieutenant Brain Baird.

48.     A reasonable official could not have believed under these circumstances that his actions of terminating the Plaintiff were lawful.  Sheriff P.J. Tanner had fair and clear warning of what the Constitution requires.

49.     Plaintiff was not afforded a hearing or forum to object to the termination.

50.     In addition, she was not afforded any administrative remedies. Plaintiff, further, was not afforded a "name clearing" hearing by Beaufort County Sheriff's Office in order to clear her good name and reputation against the false allegations of wrong doing made by the Defendants.

51.     After Plaintiff was hired by Bluffton Police Department in September of 2017, she availed herself of the administrative process before the South Carolina Criminal Justice Academy to have her certificate reinstated.

52.     When Plaintiff was provided an opportunity, in December of 2017, to contest the suspension of her law enforcement certificate by virtue of her termination from Beaufort County, her case was presented before a hearing officer for the South Carolina Law Enforcement Training Division. The hearing officer's formal written decision found that she had *not* committed misconduct and ordered her certificate be reinstated.

53.     At the December 2017 hearing, Beaufort County Sheriff's Office and Lt Baird, who had been provided ample notice of the hearing and administrative subpoena power, appeared with no witnesses, in keeping with the shoddy and cavalier approach taken to the initial Internal Affairs investigation.

54.     At the conclusion of the December 2017 hearing, when it was apparent that the hearing officer intended to reinstate Plaintiff's law enforcement certificate, Lt Baird told Plaintiff

that this would be the last time he appeared at a Criminal Justice Academy contested hearing without a witness.

55.     Upon information and belief, sometime between the December hearing and January 3, 2018, in retaliation for their defeat at the Criminal Justice Academy hearing, Defendants leaked to a reporter for the *Island Packet* the existence of Plaintiff's Internal Affairs investigation and, specifically, the existence of a video recording of her polygraph examination.

56.     On January 3, 2018, the *Island Packet* submitted a Freedom of Information Act request for Plaintiff's personnel file and specified that the request included a demand for any and all available video recordings contained in the file.

57.     Upon information and belief, on or before January 21, 2018, Defendants published to the *Island Packet* the incomplete and shoddy Internal Affairs report and the video recording of Plaintiff's procedurally flawed polygraph interview. Because the report and video failed to note the corroboration of Plaintiff's recollections by Lindsay Vargas and the fraudulent nature of the Emma Lipinski email, these documents knowingly, intentionally, or recklessly cast Plaintiff in a negative and false light.

58.     On January 21, 2018, the *Island Packet* published a story entitled "'I want cash money!' What caused this Beaufort sheriff's deputy to lose her job?" based on these false and misleading documents, causing irreparable damage to Plaintiff's reputation in the community, a reputation she depended on in order to be successful in her law enforcement career.

59.     These actions deprived the Plaintiff of a liberty interest protected by the Due Process Clause.

60.     Plaintiff has always had an excellent reputation within the law enforcement community.

61.    As a direct and proximate result of the Defendant's intentional discrimination, the Plaintiff has been damaged in that she lost wages and incurred additional expenses, costs, and attorney's fees as well as experienced mental anguish and trauma, in such amount as to be determined at trial.

### FIRST CAUSE OF ACTION
(Title VII-Discrimination, Harassment, Hostile, Retaliation)
(Beaufort County Sheriff's Office)

62.    Plaintiff incorporates all allegations above into this cause of action.

63.    Defendants is engaged in an industry affecting commerce and had more than 500 employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year of the discrimination

64.    Defendants is engaged in an industry affecting commerce and had more than 15 employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

65.    Defendants engaged in a pattern and practice of unlawful discrimination against Plaintiff because of her race, sexual orientation and failure to conform to the female gender stereotypes.

66.    Defendants act of terminating Plaintiff is in violation of Title VII.

67.    Plaintiff exhausted her administrative remedies.

68.    Plaintiff was a target for discrimination, humiliation, intimidation, ridicule and she was subjected insults, harassment, and hostility.

69.    Defendants at all times relevant hereto, had actual and constructive knowledge of the conduct described herein and failed to take reasonable steps to prevent the discrimination against Plaintiff due, to her sexual orientation and nonconformance to gender norms, from occurring.

70. All the harassment, discrimination and hostilities suffered by Plaintiff in the work place are imputable to Beaufort County Sheriff, and Beaufort County Sheriff P.J. Tanner. Defendants had actual knowledge of the conduct and not only failed to take any effective action to correct it.

71. Defendants violated Title VII, by failing to adequately supervise, control, report and/or discipline the harassing conduct against Plaintiff.

72. Within three hundred (300) days of the discriminatory actions set forth above, Plaintiff filed a charge of discrimination based on sex and race in employment with the Equal Employment Opportunity Commission ("EEOC"). Thereafter, the EEOC issued a right to sue notice dated August 3, 2018 authorizing this lawsuit. Plaintiff has exhausted her administrative remedies. (Exhibit 1)

73. As a direct and proximate result of violations of Title VII, Plaintiff has suffered and will continue to suffer pain and suffering, extreme and severe mental anguish and emotional distress. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

74. Plaintiff has been compelled to retain the services of counsel to pursue her administrative and legal remedies and will continue to incur legal fees and costs. Plaintiff requests that attorney's fees be awarded pursuant to 42 U.S.C. § 2000e-5(k).

75. Defendants' actions as set forth above were intentional, willful, wanton, reckless, malicious, and with utter disregard for Plaintiff's rights protected by federal law, therefore, Plaintiff is entitled to recover punitive damages.

76. Defendants had no legitimate nondiscriminatory reasons for any of such acts. Each of said acts of retaliation are in violation of Title VII.

77.     Plaintiff believes that in addition to the practices enumerated above, Defendant may have engaged in other discriminatory practices against her which are not yet fully known.  At such time as such discriminatory practices become known, Plaintiff will seek leave of Court to amend this Complaint in that regard.

78.     Defendants, via its deputies and employees, have engaged in intentional retaliation by terminating Plaintiff and have done so with malice and reckless indifference to Plaintiff's federally protected rights.

79.     Proximately and directly as a result of Defendants' conduct, Plaintiff has suffered damages including, but not limited to, embarrassment, humiliation, pain and suffering, mental anguish, loss of enjoyment of life, attorneys' fees, and costs.

**FOR A SECOND CAUSE OF ACTION**
Violation of 42 U.S.C. §1981
(All Defendants)

80.     Plaintiff incorporates all allegations above into this cause of action.

81.     Under 42 U.S.C. § 1981, as amended, all persons are guaranteed the same right to make and enforce contracts as Caucasians and intentional racial discrimination, harassment and retaliation in the making and enforcement of public and private contracts is prohibited.

82.      The term "make and enforce" contracts includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of contractual relationships.

83.     At all times relevant, Plaintiff was in a contractual relationship with Defendants within the meaning of 42 U.S.C. § 1981, as amended.

84.     During Plaintiff's employment, Defendants violated Plaintiff's rights by depriving her of the right to the enjoyment of all benefits, privileges, terms, and conditions of her employment contract as is enjoyed by Caucasians, in violation of 42 U.S.C. § 1981(b), as amended.

85.     During Plaintiff's employment with Defendant, Plaintiff had not enjoyed the same benefits, privileges, terms, and conditions of employment as Caucasians  employees of Defendants.

86.     Defendants treatment, practices, and policies directed toward Plaintiff, as more fully described above, denied her the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by non-African-American citizens, in violation of 42 U.S.C. § 1981, as amended.

87.     Through its actions and treatment of Plaintiff, as more fully described above, Defendants intended to discriminate and harass Plaintiff on the basis of her race.

88.     Defendants conduct was wanton, reckless, and intentional in its discrimination and harassment against Plaintiff.

89.     As a direct and proximate result of Defendants intentional discrimination and harassment on the basis of race, Plaintiff has suffered lost wages, benefits, future employment opportunities, interest, front pay, embarrassment, humiliation, pain and suffering, mental anguish, loss of enjoyment of life, attorneys' fees, and costs. Individual liability under 42 U.S.C.S. § 1981 attaches only where the individual himself participates in the

### FOR A THIRD CAUSE OF ACTION
**Violation of 42 USCA §1983**
**(Violation of Fourteenth Amendment Rights to Equal Protection**
**and Due Process Under the Law)**
**(All Defendants)**

90.     The Plaintiff realleges each and every allegation set forth hereinabove as if repeated verbatim.

91.     The defendant deprived Plaintiff of her rights secured by the Constitution and laws of the United States, and that the deprivation was performed under color of state law.

92.     Acting under the color of law, Defendants, individually and/or in their official capacities used Plaintiff's race and sex to single her out for termination when white male officers who had engaged in behavior similar to or more egregious than that of which she was accused.

93.     By singling Plaintiff out for disparate treatment, Defendants discriminated against her on the basis of her race and sex, in violation of her rights to equal protection as provided by the Fourteenth Amendment to the United States Constitution, as well as other privileges and immunities.

94.     Acting under color of law, Defendants, individually and/or in their official capacities, conducted a sham investigation of a citizen complaint, failed to investigate the nature of the only corroborating witness to the citizen complaint, and caused this incomplete record of the facts to be transmitted to the South Carolina Criminal Justice Academy via the PCS form with the knowledge and intent that this would cause Plaintiff's law enforcement certificate to be suspended.

95.     By failing to conduct their investigation in a fair and unbiased way and by depriving Plaintiff of their honest and fair efforts, the Defendants deprived Plaintiff of Due Process under law, as required by the Fourteenth Amendment to the United States Constitution.

96.     That the conduct of the Defendants, individually and/or in their official capacity as set forth above, were willful, reckless, malicious and in total disregard of the Plaintiff's federally protected rights. Plaintiff asserts that she is entitled to actual, consequential and compensatory damages, as well as reasonable attorney's fees and costs.

**FOR A FOURTH CAUSE OF ACTION**
(Violation of Fourteenth Amendment Rights – Due Process)
(42 U.S.C. § 1983)
(All Defendants)

97.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

98.     The Defendants' act of terminating the Plaintiff and reporting false and misleading information about Plaintiff to SC Criminal Justice Academy was an arbitrary and malicious abuse of power, thereby violating Plaintiff's procedural due process of law as secured by the Fourteenth Amendment to the Constitution of the United States and constituted a violation of 42 U.S.C. § 1983.

99.     The Defendants, as required by law, did not give Plaintiff, a sheriff deputy, procedural due process protections.

100.    Plaintiff was terminated without receiving notice, hearing, an opportunity to be heard, or a meaningful opportunity to contest the allegations against her.

101.    Plaintiff was deprived of a protected interest in her property right namely her job and livelihood as certified law enforcement officer.

102.    Plaintiff had a liberty interest in continued employment under state and local law.

103.    The Defendants had property and practices promulgated and fostered by state officials that justified Plaintiff's entitlement to continued employment absent "sufficient cause".

104.    Plaintiff was not given procedural due process to contest the alleged allegations against her.

105.    Plaintiff had a liberty interest to engage in her chosen occupation.

106.    The charges against the Plaintiff placed a stigma on her reputation, by alleging that misconduct and dishonesty regarding her separation from employment.

107.     Upon information and belief these statements were made public by the employer to any potential employer.  Plaintiff asserts that all allegations of unethical or improper dissemination of information are false.

108.     The conduct of the Defendants damaged and impugned the good name, reputation, honor, and integrity of Plaintiff, a law enforcement officer, in the State of South Carolina.

109.     As a direct and proximate result of Defendants' conduct described herein, Plaintiff has been damaged and is entitled to injunctive relief and compensation.

## FOR A FOURTH CAUSE OF ACTION
(Defamation)
(All Defendants)

110.     Defendants published or caused to be published numerous statements concerning Plaintiff, her employment, and the circumstances of her termination, including but not limited to the PCS form, the Internal Affairs Report, Lt Baird's polygraph examination report, and various articles in the *Island Packet*.

111.     Defendants' statements, which, by calling into question her character for truthfulness and alleging impropriety in her performance of her professional duties, tended to impeach Plaintiff's honesty, integrity, virtue, and reputation.

112.     Defendants' defamatory statements were false.

113.     Defendants' defamatory statements were not protected by any privilege.

114.     Defendants' defamatory statements were made with implied or actual malice, ill-will, or reckless and wanton disregard for their falsity.

115.     As a direct and proximate result of Defendant's conduct described herein, Plaintiff has suffered embarrassment, humiliation, mental suffering, as well as pecuniary loss for which she is entitled to compensation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands:

a. An affirmative injunction against the Defendants, from maintaining false allegations in Plaintiff's personnel file, and disseminating false allegations against the Plaintiff;

b. That any and all information stating that Plaintiff was terminated from employment or violated policies and procedures, including but not limited to Sheriff's Office County Rules, Regulations and Policy, Code of Ethics, Rules of Conduct and placed at the South Carolina Criminal Justice Academy, or in any personnel or other governmental file by the Defendant employer, his agents or employees, be removed there from immediately.

c. Injunctive relief, including but not limited to reinstatement of Plaintiff to her former position of employment, including to current salary and benefits levels comparable with the current pay scale;

d. Entering a Judgment to compensate the Plaintiff for economic and non-economic damages incurred by the Plaintiff, including but not limited to, the humiliation, stress, mental anguish, embarrassment, and loss of enjoyment of life suffered by the Plaintiff;

e. Granting punitive damages against the Defendants;

f. Attorneys' fees and costs; and

g. All such further relief as the Court deems just and equitable under the causes of action set forth above.

## JURY TRIAL DEMANDED

Plaintiff Selena Nelson, hereby demands a trial by jury.

Respectfully submitted,

s/ Marybeth Mullaney
Marybeth Mullaney, Esq. FID 11162
1037-D Chuck Dawley Blvd Suite 104
Mount Pleasant, SC 29464
(843) 588-5587
marybeth@mullaneylaw.net

/s/ Cameron Jane Blazer
Cameron Jane Blazer, Esq. FID 10131
1037-D Chuck Dawley Blvd Suite 104
Mount Pleasant, SC 29464
(843) 732-4441
cameron@blazerlaw.com


*ATTORNEYS FOR PLAINTIFF*

November 2, 2018
Mt. Pleasant, SC