IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

BEAUFORT DIVISION

| | |
|---|---|
| Selena Nelson ) | CIVIL ACTION NO.:9:18-CV-2962-DCN-MHC |
| Plaintiff, ) | |
| -vs- ) | **MEMORANDUM IN SUPPORT OF MOTION SUMMARY JUDGEMENT** |
| Beaufort County Sheriff's Office, Lieutenant Brian Baird, and Sheriff P.J. Tanner, individually and in their official capacity, ) | |
| Defendants. ) | |

Defendants hereby submit this memorandum of law in support of their motion for partial judgment on the pleadings.

## BACKGROUND

The present action arises from an incident which occurred on or around July 31, 2017 when Plaintiff was the subject of a citizen complaint arising from an alleged altercation with Tyler Weaver, a clerk at the Oreck store in Bluffton, SC. (Plaintiff's Comp., ¶ 28). According to the complaint, Plaintiff, a former deputy for the Beaufort County Sheriff's Office, went into the store expecting to exchange a defective unit or receive a refund. (Plaintiff's Comp., ¶ 31). Weaver alleged in his citizens complaint that during that time, Plaintiff bullied him while demanding the cash refund and acted "thug-like." (Plaintiff's Comp., ¶ 28).

As a result of Weaver's complaint, Plaintiff was interviewed by Lt. Baird regarding the facts of the incident as part of an internal investigation. Plaintiff's

Comp., ¶ 30).    Baird interviewed the Owner of the Oreck store, Bradley Blake, Weaver, and Lindsey, another employee that had been involved via telephone in the interactions between Weaver and Nelson.  (Internal Affairs Report of Baird) Weaver described conduct that was unprofessional and intimidating, including cursing and yelling by a fully armed and uniformed Nelson.   Nelson denied the unprofessional behavior and on August 9, 2017,  Because of the discrepancies in the versions of the events of that day, Nelson was ordered to take a polygraph exam, which was to be administered by Matthew Averil, but Lt. Baird  directed the questions. Nelson was warned on several occasions by Baird to be certain and truthful in her statements because it is the policy of Sheriff Tanner that if deception indicated is the outcome on a polygraph, the officer will be terminated.   (Deposition of Baird , P. 172-173 L. 23-25 and 1-2, and P. 90 L. 17-20)

   Nelson was required to write out a statement of the events that occurred at the Oreck store.  She was then asked if she lied in the statement she wrote. (Depo Testimony of Baird P. 105 L. 18;  IA investigation of Baird, number 15)  Averill and Baird both scored the exam.  Based on the scoring of the polygraph exam by both Averil and Baird, deception was detected by both scorers. Following the polygraph examination, Baird interviewed Nelson again and she admitted to raising her voice, however, said she never raised it to the highest possible level and she eventually admitted to using the word ass in a non-derogatory manner while talking with Lindsey on the telephone in the store. (Depo of Baird p. 122, line 21-23 )Attached to the report was the original citizens complaint, emails between Baird and

2

witnesses, statements, audio and/or video recordings of the interviews and polygraph exam, and relevant BCSO standing orders.

Baird submitted the Internal Affairs report and all attachments to the Chief Deputy and Sheriff P.J. Tanner. No recommendation was made in that report. The report contained summaries of the interviews, steps taken in the investigation and the results of the polygraph and subsequent interview with Nelson. The Report also contains a conclusion that Nelson acted in an unprofessional manner while wearing her uniform in the Oreck store on July 31, 2017, and that she subsequently lied about her actions, and only after her polygraph did she admit that she raised her voice and used the word ass in the store. (Internal Affairs Report).

The Report was provided to the Chief Deputy who then provided it to the Sheriff. The Sheriff requested a Command Staff review where members of the command staff in Nelson's chain of command are given a copy of the Internal Affairs Report and make recommendations to regarding disciplinary action. The Command Staff in Nelson's review unanimously agreed she should be terminated. (Disciplinary Action Form)   A meeting with Nelson, members of Command Staff and the Sheriff was held on August 10, 2017.  The Plaintiff was given an opportunity to read the internal affairs report and make any comments. She was then provided with the Disciplinary Action Form indicating she was to be terminated and she was again provided the opportunity to make a comment which she chose not to do and refused to sign the form. (Disciplinary Action Form)

Thereafter, as required by state law, Nelson's termination was reported on a Personnel Change in Status (PCS) Report to the Criminal Justice Academy denoting "misconduct" as the reason for termination, which resulted in suspension of Plaintiff's state law enforcement certificate. (Plaintiff's Comp., ¶¶ 38, 43). Plaintiff sought to have her certificate reinstated before a hearing officer for the South Carolina Law Enforcement Training Division in December 2017 who found that it was "unclear whether Ms. Nelson was dishonest" and misconduct was not proven by substantial evidence which is the relevant standard. As a result the Training Council found on March 25 2020 that Nelson did not engage in misconduct and reinstated her certificate, but did place her on two years probation and ordered attendance in ethics classes for those two years. (Law Enforcement Training Council Final Agency Decision)

Plaintiff alleges that, sometime between the December hearing and January 3, 2018, Defendants leaked to the *Island Packet* the existence of Plaintiff's internal affairs investigation and a video recording of her polygraph exam. (Plaintiff's Comp., ¶ 55). On January 3, 2018, the Gina Smith a reporter with the *Island Packet* submitted a Freedom of Information Act request to the Sheriff for a complete copy of the personnel file of Nelson and entire internal affairs investigation that resulted in her termination including any videos. (Freedom of Information Act Request) The Sheriff's Office responded to the FOIA request pursuant to the mandate of state law. The *Island Packet* subsequently published a story that Plaintiff alleges damaged her reputation. (Plaintiff's Comp., ¶¶ 56-58).

Plaintiff filed the present action on November 2, 2018, alleging causes of action under Title VII, 42 U.S.C. sections 1981 and 1983, and a state law Defamation claim. These claims are not supported by evidence sufficient for a question of fact to be put to a jury.

## LEGAL STANDARD

## ARGUMENT

The Court should grant the Defendants Motion for Summary Judgment because Plaintiff has failed to produce evidence sufficient to present a jury with a genuine issue of material fact.

### I. Claim for Title VII Discrimination and Retaliation and Race Discrimination Claim under 42 U.S.C. § 1981

The Plaintiff has asserted claims of discriminatory conduct against the Beaufort County Sheriff's Office on the basis of race and sexual orientation. The Plaintiff additionally alleges that she was subjected to a hostile work environment and was terminated her because of her race and sexual orientation. However, the Plaintiff can point to no evidence of such discriminatory conduct or harassment. Furthermore, the Sheriff had a legitimate non-discriminatory basis for termination of the Plaintiff, in that she was deemed to have been deceptive during the course of an internal affairs investigation.

Both 42 USC §1981 and Title VII prohibits an employer from taking adverse employment action against an employee "because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish a Title VII violation in two ways. First, a plaintiff can show through direct evidence that racial discrimination

5

motivated an employer's adverse employment action. See, e.g., Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005). If a plaintiff lacks direct evidence (as in this case), a plaintiff can alternatively proceed under the burden-shifting framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284–85 (4th Cir. 2004) (en banc), abrogated in part on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013).

The McDonnell Douglas framework is comprised of three steps: (1) the plaintiff must first establish a prima facie case of employment discrimination or retaliation; (2) the burden of production then shifts to the employer to articulate a non-discriminatory or non-retaliatory reason for the adverse action; (3) the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the stated reason for the adverse employment action is a pretext and that the true reason is discriminatory or retaliatory." Guessous v. Fairview Prop. Investments, LLC, 828 F.3d 208, 216 (4th Cir. 2016). The McDonnell Douglas framework applies to failure to hire, termination, and retaliation claims under Title VII and section 1981. See, e.g., Williams v. Giant Food Inc., 370 F.3d 423, 430 (4th Cir. 2004); Beall v. Abbott Labs., 130 F.3d 614, 619 (4th Cir. 1997), abrogated in part on other grounds by Gilliam v. S.C. Dep't of Juvenile Justice, 474 F.3d 134 (4th Cir. 2007). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence that the adverse employment action was "for a legitimate, nondiscriminatory reason." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248,

6

254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). This burden is one of production, not persuasion. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If the defendant offers admissible evidence sufficient to meet its burden of production, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination." Hill, 354 F.3d at 285 (quotation omitted); see, e.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); King v. Rumsfeld, 328 F.3d 145, 150–54 (4th Cir. 2003). A plaintiff can do so by showing that the employer's "explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [illegal] discrimination." Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004) (quotation omitted); see Reeves, 530 U.S. at 147, 120 S.Ct. 2097.

In analyzing the record concerning pretext, the court does not sit to decide whether the employer in fact discriminated against the plaintiff on an illegal basis. See, e.g., Holland v. Washington Homes, Inc., 487 F.3d 208, 217 (4th Cir. 2007); Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279–80 (4th Cir. 2000). Rather, the court focuses on whether the plaintiff has raised a genuine issue of material fact as to pretext under Reeves and its Fourth Circuit progeny. Under Reeves and its Fourth Circuit progeny, a plaintiff may not "simply show the articulated reason is false; he must also show that the employer discriminated against him on the basis of [race]." Laber v. Harvey, 438 F.3d 404, 430–31 (4th Cir. 2006) (en banc). In certain cases,

however, the factfinder may infer illegal discrimination from the articulated reason's falsity. See id. at 431; Rowe v. Marley Co., 233 F.3d 825, 830 (4th Cir. 2000).

The evidence in this case is clear that a complaint was made based on the conduct of the Plaintiff while in uniform returning an item to the local Oreck store. The Sheriff requested Baird perform an internal affairs investigation into the complaint. The complaining store owner was interviewed, as was the employee that was allegedly the subject of the abusive conduct by the Plaintiff. The Plaintiff was then interviewed whereby she specifically denied the allegations of the complaining parties. This interview lasted over two hours and she was warned approximately many times to be truthful or her job would be in jeopardy. The Plaintiff insisted she did not raise her voice and did not use profanity. It was then determined that because of the conflicting versions of events, a polygraph would be given to the Plaintiff. The Plaintiff was required to write a written statement about the alleged events in the Oreck Store and was asked if her statement was truthful. Deception was indicated on the polygraph exam that was performed by Matt Averill of the Sheriff's Department. She was then confronted that deception was indicated on the exam and admitted that she may have used the word ass though not directed at the complainant and did raise her voice, but not to her fullest extent. She was terminated for insubordination for lying on the polygraph examination, consistent with the Sheriff's zero tolerance policy for lying. The Sheriff testified that without exception if it is determined that his employee lies at any time, for any reason, their career is over as far as his office is concerned. (Depo. Of Sheriff Tanner p. 223 l. 10-12, 15-20) Furthermore, Baird testified that it is the

policy of the Sheriff's office that if you lie in an investigation you lose your certification as a law enforcement officer. (Depo of Baird p. 172, lines 5-7)

While the Plaintiff has alleged that white male officers have been given less severe punishment than termination for more serious infractions than her behavior at the Oreck store, she fails to recognize that her terminating infraction and the seriousness of her infraction for insubordination and lying and the zero tolerance policy of the Sheriff for lying.  The Plaintiff can point to no employee at the Sheriff's office who has been determined to have lied during an investigation that was not terminated as the result of that lie.   Furthermore, the Plaintiff can point to no evidence that this "zero-tolerance policy for lying" was applied in a discriminatory manner on the basis or sexual orientation or race.

While the Plaintiff complains that her initial infraction of unprofessional conduct was treated more harshly than white males with more serious infractions, the Plaintiff fails to recognize that her ultimate infraction of lying was a very serious one that resulted in immediate termination and she cannot show that in that regard she has been treated differently from any other employee of the Sheriff.

## II.    Claim for Title VII Hostile Work Environment and Harassment

Likewise the Plaintiff alleges a violation of Title VII in that she was forced to endure a harassment and a Hostile Work Environment of the basis of her race and sexual orientation.  The Plaintiff has failed to provide any evidence of either.

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). As made clear in *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), this language "is not limited to 'economic' or 'tangible' discrimination. The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment," which includes requiring people to work in a discriminatorily hostile or abusive environment. *Id.,* at 64, 106 S.Ct., at 2404, quoting *Los Angeles Dept. of Water and Power v. Manhart,* 435 U.S. 702, 707, n. 13, 98 S.Ct. 1370, 1374, 55 L.Ed.2d 657 (1978) (some internal quotation marks omitted). When the workplace is permeated with "discriminatory intimidation, ridicule, and insult," 477 U.S., at 65, 106 S.Ct., at 2405, that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," *id.,* at 67, 106 S.Ct., at 2405 (internal brackets and quotation marks omitted), Title VII is violated.

This standard takes a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury. As pointed out in *Meritor,* "mere utterance of an ... epithet which engenders offensive feelings in a employee," *ibid.* (internal quotation marks omitted) does not sufficiently affect the conditions of employment to

10

implicate Title VII. Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview.

The Plaintiff in this matter is unable to point to any conduct that would be considered hostile or abusive or harrassing. During her deposition, she could point to no real instances of an objectively hostile or abusive work environment and indicated that she had on occasion been called a lesbian, gay or a stud. (Depo p. 29 lines 3-8) When asked how she was singled out on the basis of race, she indicated that she would be sent on assignment to predominately Black neighborhoods. (Depo of Nelson p. 31, line 23-25, p. 32,, line 1-8) All the evidence in this matter is that the Plaintiff was given routine raises and promotions and was never demoted or treated in any fashion that would be considered harassing based on her race or sexual orientation.

Based on the foregoing, it is respectfully submitted that the Plaintiff has failed to produce evidence sufficient to support a claim for Title VII Hostile Work Environment and Harassment.

### III.     Claims under 42 U.S.C. § 1983 Violation of Due Proces

The Plaintiff asserts against Defendant Baird and Tanner a claim for a violation for due process for terminating her without a right to be heard or a right to contest the allegations against her. The Plaintiff suggests that Defendants violated his rights under the Due Process Clause by terminating her employment as deputy

without providing her the opportunity to file a grievance or have a hearing in relation to said termination. However, the Constitution does not mandate that employers provide at-will employees, such as deputy sheriffs, with grievance rights. Indeed, a public employee cannot invoke the procedural protections of the Due Process Clause unless she can demonstrate that she has been deprived of a liberty or property interest protected by the clause. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569–70 (1972). As an at-will employee, Plaintiff's "subjective expectancy of continued employment" does not constitute a liberty or property interest protected by the Due Process Clause. *Bane v. City of Columbia*, 480 F. Supp. 34, 37 (D.S.C. 1979) (internal citations omitted); *see also Jenkins v. Weatherholtz*, 909 F.2d 105, 107 (4th Cir. 1990) (explaining that "government employee serving 'at the will and pleasure' of the government employer has no legitimate expectancy of continued employment and thus has no protectible property interest").

Furthermore, Baird was not her supervisor or employer and did not make the recommendation to or the decision to terminate the Plaintiff.

**IV. Claims for 42 USC §1983 Violation of Equal Protection And Due Process**

Plaintiff also asserts a claim for Violation of 42 USC §1983 for Violation of Equal Protection and Due Process. As set forth above, the Plaintiff cannot point to any evidence that the Plaintiff's termination was the result of disparate treatment or that the Plaintiff was discriminated on the basis of her race or sex, in violation of her equal protection rights. Furthermore, to the extent that the court may find

the polygraph examination was somehow flawed in violation of the Plaintiff's Constitutional rights, the Defendants are entitled to Qualified Immunity because they actions they took in terminating the Plaintiff on the basis of a finding of deception detected in that exam where not a knowing violation of her rights.

As previously discussed the Plaintiff cannot show disparate treatment in her termination, based on the fact that the Sheriff has a zero tolerance policy for officers determined to have lied on any occasion.  The Plaintiff cannot point to a single instance of that policy not being enforced in a consistent manner regardless of race or sex.  Moreover, all employees terminated for misconduct, are reported as such to SC Criminal Justice Academy.

Furthermore, while Tanner was the ultimate decision maker in this matter, the Plaintiff has no evidence that Baird did anything other than perform his investigation and report his finding to his command.  The Plaintiff cannot show that any action on the part of Baird resulted in her rights being violated. Baird did not determine the ultimate outcome of his investigation and did not make a recommendation as to discipline or termination.

Lastly, to the extent that the Court determines that the Sheriff's investigation into the Oreck store was faulty as it relied inappropriately upon the results of an incomplete investigation or a flawed polygraph examination, these Defendants are entitled to Qualified Immunity.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

have known." <u>Harlow v. Fitzgerald,</u> 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." <u>Groh v. Ramirez</u>, 540 U.S. 551, 567, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (KENNEDY, J., dissenting) (quoting <u>Butz v. Economou</u>, 438 U.S. 478, 507, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), for the proposition that qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law").

Both Defendants believed that the Plaintiff had knowingly lied during the course of the investigation and the Sheriff applied the office's zero tolerance policy in that respect. If the court should find that this was a mistake of fact, it would still not be a knowing violation for the Plaintiff's constitutional rights.

v. **State Defamation Claim**

Plaintiff has failed to state a claim for which relief may be granted because she has failed to present evidence of a state law defamation claim against Baird and Tanner

Defamation claims require the proof of four essential elements: (1) a false and defamatory statement made; (2) the unprivileged statement was published to a third party; (3) the publisher is at fault; and (4) either the statement is actionable

14

irrespective of harm or publication of the statement caused special harm. Fleming v. Rose, 350 S.C. 488, 494, 567 S.E.2d 857, 860 (2002). However, where the plaintiff is considered a "public official," the "fault" plaintiff must prove is that the statement was made with "actual malice." Id. In the present case, Plaintiff is considered a public official for purposes of a state defamation action because she was a police officer at all times relevant to the action. See McClain v. Arnold, 275 S.C. 282, 284, 270 S.E.2d 124, 125 (1980) (holding police officer was "public official" for purposes of defamation action brought in connection with report of supposed false arrest.); see also Plaintiff's Comp., ¶¶ 2, 22, 23.  Therefore, Plaintiff is required to prove "actual malice" in connection with the alleged defamatory statement.

Plaintiff alleges in her Complaint that these Defendants published or caused to be published numerous statements concerning the Plaintiff and her employment and the circumstances of her termination, including the PCS form, the IA report, the polygraph exam report and other "various articles" in the Island Packet, a local newspaper.

First, these items were all created as part of the Sheriff's Departments internal operations and were not created for public use.  The Sheriff's Office is mandated to produce the PCS form under state law to the SC Criminal Justice Academy setting forth the basis for a separation of employment between a certified law enforcement officer and an agency.   S.C. Code Ann Regs §37-022.    This is an action mandated under state law by the Sheriff action in the scope of his duties

as a law enforcement officer. Plaintiff's allegation as it relates to defamation for publishing the PCS form is statutorily barred by S.C. Code § 23-23-90.

That section provides:

> An oral or written report, document, statement, or other communication that is written, made, or delivered concerning the requirements or administration of this chapter or regulations promulgated pursuant to it must not be the subject or basis for an action at law or in equity in any court of the State if the communication is between:
> (1) law enforcement agencies, their agents, employees, or representatives; or
> (2) law enforcement agencies, their agents, employees, or representatives and the academy or the council.

The defamation claims are based in part on communications between Defendants and the South Carolina Law Enforcement Training Council. Moreover, there is no evidence that this document was sent by Baird. The only evidence is that it was sent on behalf of the Sheriff as the head of his law enforcement agency to the South Carolina Law Enforcement Training Council.

Additionally, the IA Report, polygraph examination report and other items contained in the personnel file of the Sheriff's Department were part of the internal personnel documents of the Sheriff's office. There is no evidence that Tanner or Baird made this information available to anyone outside of the proper chain of command within the Sherriff's Office.

In *Bell v. Bank of Abbeville*, the SC supreme court held:

> In determining whether or not the communication was qualifiedly privileged, regard must be had to the occasion and to the relationship of the parties. When one has an interest in the subject matter of a communication, and the person (or persons) to whom it is made has a corresponding interest, every communication honestly made, in order to protect such common interest, is privileged by reason of the occasion. The statement, however, must be such as the occasion warrants,

16

and must be made in good faith to protect the interests of the one who makes it and the persons to whom it is addressed.

208 S.C. 490, 493–94, 38 S.E.2d 641, 643 (1946). Generally, whether an occasion gives rise to a qualified privilege is a question of law for the court. *Castine*, 403 S.C. at 267, 743 S.E.2d at 97. "A qualified privilege may exist whe[n] the parties have a common business interest. The only evidence in this case is that Baird published the contents of his Internal Affairs report to his chain of command in the Department who addressed the issue with the Plaintiff only in a hearing with only her chain of command present. Thus, to the extent that publication is asserted by the Plaintiff, these Defendants are entitled to qualified privilege.

The Plaintiff contends that "someone" leaked the existence of the IA investigation to an Island Packet reporter thus publishing the information. However, there is no evidence to support this claim. The only evidence is that this information was requested in a Freedom of Information Act request made by a reporter from the Island Packet. The Plaintiff alleges without proof that "someone" told the media outlet to make the FOIA request. The Plaintiff has offered no evidence that this "someone" is either Baird or Tanner. In fact there is no evidence, other than her speculation, that a tip was even made to the press.

Moreover, none of the information contained in these reports are defamatory in nature. While the Plaintiff may not agree with the conclusions drawn by the Sheriff, relative her honesty, the Plaintiff can point to nothing in the documents that is not a true and accurate statement of what occurred. (Audio and

17

Video of Interviews and polygraph with Nelson mailed under cover of separate letter to the court) Importantly, the entire interview of the Plaintiff as well as her polygraph are recorded.  There is no statement made in these reports that can be shown to be false. She made a statement relative to the complaint at the Oreck store, a polygraph was performed, deception was indicated, and she later admitted that her statement was not completely accurate in that she did say the word "ass" but in a different context and that she did raise her voice but not to the fullest extent when she had previously denied those allegations.  Thus, the Plaintiff cannot show that the information in these reports and documents was not true, and she cannot show that they were published by Baird or Tanner, so she cannot meet the elements of a cause of action for defamation.

## **CONCLUSION**

Based on the foregoing, it is respectfully submitted that there is no genuine issue of material fact for the jury in this matter and the Defendants respectfully request this Court grant their motion for summary judgment.

HOWELL, GIBSON & HUGHES, P.A.


By: s/Mary Bass Lohr
Mary B. Lohr
Post Office Box 40
Beaufort, SC  29901-0040
(843) 522-2400
Attorney for Defendant
Bar No: 7804

Beaufort, South Carolina
March 10, 2021