**Baird, Brian**

| | |
|---|---|
| **From:** | Hatfield, Michael |
| **Sent:** | Tuesday, October 23, 2018 5:40 PM |
| **To:** | Chapmond, Christopher |
| **Subject:** | RE: Reference Selena Nelson |

Chief Chapmond:
10-4, we will be happy to fulfill your request. Please have Captain Babkiewicz set up a date and time with Lieutenant Brian Baird, our Office of Professional Responsibility (Internal Affairs) investigator and we make our documents available for copy and/or review. Lt. Baird can be reached at (843) 255-3405 in the office or by cell at (843) 812-7751 or by email at briabb@bcgov.net.
MH

**From:** Chapmond, Christopher [mailto:cchapmond@townofbluffton.com]
**Sent:** Tuesday, October 23, 2018 4:50 PM
**To:** Hatfield, Michael
**Cc:** Babkiewicz, Joseph
**Subject:** Reference Selena Nelson

Chief Hatfield,

I am requesting any documentation in regards to complaints, disciplinary action and the termination findings on a former deputy named Selena Nelson. Captain Babkiewicz is planning on reaching out to your internal affairs officer tomorrow and make the request formally. Please let me know if you see any issue in obtaining these documents.

Respectfully,
Chief Chapmond
Disclaimer from Town of Bluffton: This email message (including all attachments) is intended only for the person or entity to which it is addressed. It may contain confidential and/or privileged information and material that may be protected by HIPAA, the Electronic Communications Privacy Act, and other federal and state confidentiality laws. Communications sent to or from the Town of Bluffton are subject to the SC Freedom of Information Act. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is strictly prohibited and punishable to the fullest extent of the law. If you are not the intended recipient, please contact the sender by return email and destroy all copies of the original message.

Certified to be a true and correct copy of the original on file with the Office of the Clerk of Court, Beaufort County.

Chief Deputy, Beaufort County Clerk's Office



# South Carolina Criminal Justice Academy

RECEIVED

August 20, 2018

AUG 2 2 2018

Benjamin T. Shelton, Esquire
Finger, Melnick & Brooks, P.A.
35 Hospital Center Common, Suite 200 (29926)
P. O. Box 24005
Hilton Head Island, SC  29925

Beaufort County Sheriff's Office

Via certified mail

Re:        In the Matter of the Issuance of Law Enforcement Officer Certification to Selena
           Nelson Case No. 2017-CJA-08-10

Dear Mr. Shelton:

Enclosed please find the final agency decision in the above referenced case.  You are entitled to
appeal this decision to the Administrative Law Court if you choose.  Any such appeal must be
filed with the Administrative Law Court within thirty (30) days after receiving this notification
and must be served on me on the Law Enforcement Training Council's behalf.

If you have any questions or concerns, please do not hesitate to contact me at (803) 896-7722.

Sincerely,

James M. Fennell
General Counsel

Enclosure as Stated

cc:    Phennis J. Tanner, Sheriff
       Beaufort County Sheriff's Office
       PO Box 1758
       Beaufort, SC 29901


       Donald S. Chandler, Chief
       Bluffton Police Department
       PO Box 386
       Bluffton, SC 29910

Certified to be a true and correct
copy of the original document on file with
the Office of the Sheriff of Beaufort County.

Chief Deputy, Beaufort County Sheriff's Office

## LAW ENFORCEMENT TRAINING COUNCIL
## CRIMINAL JUSTICE ACADEMY

| | | |
|---|---|---|
| In the Matter of the Issuance | ) | Case No. 2017-CJA-08-10 |
| of Law Enforcement Officer | ) | |
| Certification to Selena Nelson | ) | **FINAL AGENCY DECISION** |

On April 25, 2018, the full Law Enforcement Training Council[1] voted to adopt the March 22, 2018, recommendation written by John Thomas, Director, a member of the South Carolina Law Enforcement Training Council, with modifications, as the Final Agency Decision in this case. This March 22, 2018 recommendation is attached.

### STATEMENT OF THE CASE

On August 16, 2017, the South Carolina Criminal Justice Academy (CJA) received a PCS of Separation alleging misconduct for Selena Nelson from Beaufort County Sheriff's Office (BCSO). On September 12, 2017, CJA received a PCS of Hire for Selena Nelson from Bluffton Police Department (BPD).

Ms. Nelson appeared at the hearing and was represented by Benjamin T. Shelton, esquire. Brian Baird prosecuted the allegations for BCSO. Two witnesses testified: Brian Baird and Sheldon Epstein.

### STATEMENT OF FACTS

---

[1] The Training Council Members present were Chief Mark Keel, Director Leroy Smith, Director Jerry Adger, Director Robin Morse, Director John Thomas, and Sheriff Foster. All members voted to adopt the Hearing Officer's recommendation as written.

Certified to be a true and correct copy of the original document on file with the Office of Sheriff in Beaufort County.

Chief Deputy, Beaufort County Sheriff's Office

**Testimony of Brian Baird**:

He testified that he is a lieutenant with BCSO and works as a special investigator for the sheriff. BCSO received a complaint against Ms. Nelson on August 1, 2017. In particular, that Ms. Nelson was in a store, dressed in her BCSO uniform, and that she was yelling and using profanity.

Lt. Baird interviewed the parties then interviewed Ms. Nelson to determine if she was yelling in public and whether she used the word "ass." Prior to the interview, she was provided a copy of an' Office of Professional Standards warning form. Ms. Nelson stated that she understood the form and the interview, which was recorded, began.

During the interview, He "advised her of - - the majority of the people that I deal with, the ones that have lost their job been for [sic] lying, not for what they did." Ms. Nelson denied raising her voice or using the word "ass." "Initially, she said she didn't call the clerk an ass. I told her I wasn't asking her that. I just wanted to know if she had used the word 'ass' at any point. And she said not toward the clerk… so then I explained the use of the word 'semantics' to her where she was, in my opinion, trying to, like, explain a way of using the word 'ass'. In the end, she said she adamantly denied ever using the word 'ass' in any way." Ms. Nelson "[c]ontinued to claim that it was a calm and polite conversation."

During her second interview, Lt. Baird "reminded her again that we're just talking about using the word 'ass' and not toward an individual and then focused her on her conversation on the phone. And eventually she laughed and said she remembered that she did use the word 'ass'. It wasn't in a derogatory manner but that she did use the word 'ass'." Based upon her admission "to finally using the word "ass', the interview was ended." Lt. Baird submitted his findings to the sheriff.

Page 2 of 10

Certified to be a true and correct copy of the original court . . . . . with the Office of Clerk of . . . . . . . . . . . . . . . . . . . . . . Chief Deputy, Beaufort County Clerk of . . . . .

On cross-examination, Lt. Baird testified that he wrote an internal affairs report for this incident. He wrote the entire report, signed it, and submitted Chief Deputy Hatfield. He agreed that it is his job "to document any reports, accurate and factual information." This is important because his employer relies upon this report to make employment decisions.

Furthermore, he testified that he has been an investigator for 36 years and is familiar with proper investigative techniques. He prefers to speak with witnesses "in person so [he] can observe them." He wants to "see their reactions" as this can be helpful to determine truthfulness, credibility and any bias they might have. Additionally, you can ask a witness for their identification, if you have never met them before. As a general rule, he does not perform a background check on a witness to determine whether they have been arrested or whether they have had encounters with the officer in the past.

Lt. Baird admitted that he never met with the complainant and has never met him before. During this investigation, he only spoke with the complainant via telephone, never in person. He admitted that he did not conduct an in-person interview with any individual regarding this complaint except Ms. Nelson.

Lt. Baird testified that the first interview of Ms. Nelson was approximately "two hours. Actual recorded time was two hours and 47 minutes. I believe she was in my office a total of three hours and maybe like 11, 17 minutes, something like that." However, he only interviewed all of the witnesses in about 25 minutes for all of their statements. Additionally, he admitted that he did not mention his conversation with one of the witnesses who informed him that "she did not hear Ms. Nelson use the word 'ass'." However, this witness was briefly mentioned in his summary. There was a paragraph for each of the other witnesses, in his report. Due to "an oversight" he did

Certified to be a true and correct copy of the original ... ... on file with ... ... ... ... ...

Chief Deputy, Beaufort County Sheriff's Office

not mention the witness who did not hear Mr. Nelson use the word "ass." This witness also told Lt. Baird that she did not hear Ms. Nelson yell or become loud.

**Testimony of Sheldon Epstein:**

Captain Epstein works for Bluffton Police Department (BPD) and is second in command behind Chief Manning. BPD currently employs Ms. Nelson. Capt. Epstein testified that in his "opinion that Officer Nelson presents herself in a highly professional manner and performs her duties in a [sic] exemplary fashion. And to further that, there has been at least one letter that has been received since she's been a member of the Bluffton Police Department that complimented the actions she took at an incident to which she was called within our jurisdiction."

Prior to hiring Ms. Nelson, BPD performed a background investigation on Ms. Nelson and was aware of allegations against Ms. Nelson.

On cross-examination, Capt. Epstein testified that Ms. Nelson completed an application, had an interview with Capt. Babkowitz, then had an interview with the Chief.

**Review of Exhibit #3:**

Exhibit #3 was a CD containing the first and second interview of Ms. Nelson. Certain objections were raised and sustained as to some of the material. As a result, the objectionable material was not considered as part of this Recommendation.

First Interview

At 9:12

Lt. Baird asked "Hang on a second. You're going to tell me you didn't raise your voice, you didn't start yelling 'I want cash', you didn't call him an 'ass'?"

Ms. Nelson stated "Oh no, sir."

Certified to be a true and correct copy of the ... the ... Chief Deputy Beaufort County Sheriff's Office

At 10:49

Ms. Nelson stated that "at no time did I curse this gentleman and call him an ass."

At 11:06

Ms. Nelson stated "I would never do that in uniform Lt. Baird. I would not call this man an ass."

At 14:13

Ms. Nelson stated "Lt., I know better than to act in a certain way and call someone an ass."

At 14:42

Ms. Nelson stated "I did not call him an ass."

At 14:53

Ms. Nelson stated "I had no reason to call him an ass."

At 17:14

Ms. Nelson said "I didn't call this gentleman an ass."

At 17:25

Ms. Nelson stated "Lt., I didn't call him an ass."

At 17:35

Lt. Baird stated "You may be hanging on a technicality and I don't want to see you lose a career over a technicality. If you used the word ass at any point. Whether you're calling yourself an ass. Whether you're calling someone else an ass. You are saying the word ass. If you used the word ass at any point when you were inside of that store what so ever, that is what I am asking."

Page 5 of 10

Certified to be a true and correct copy of the original document on file with the Office of Sheriff for Beaufort County.

Chief Deputy, Beaufort County Sheriff's Office

Ms. Nelson replied "Lt., I did not use the word ass."... "I didn't have the need to call him an ass."

At 25:39

Ms. Nelson stated "the only thing I said I didn't do is use the word ass."

At 37:04

Ms. Nelson stated "I know I didn't call him an ass."

At 2:1215

Lt. Baird stated "he is saying you used the word ass... Did you ever say the word ass inside [inaudible] period."

Ms. Nelson stated "I don't recall saying the word ass. I just don't recall saying the word ass."

At 2:18:12

Ms. Nelson stated "in front of no customer and at no time did I say the word ass. A-S-S, you understand?"

At 2:19:25

Ms. Nelson stated "I know I put in there that at no time I called him an ass."

At 2:20:10

Ms. Nelson stated "I never used the word ass."

Second Interview

At 4:28

Lt. Baird: "What this guy is saying. What he is saying is that while you were talking to Lindsey, you told Lindsey the reason I bought those two air purifiers because you sold your ass


Certified to be a true and correct copy of the original document on file with the Office of the Clerk Beaufort County.

Chief Deputy, Beaufort County Sheriff's Office

off."

Ms. Nelson: [audible laugh]  "Well, um, yeah, I - I told her how great she was and like I said probably did say to her 'ass' but nothing derogatory for him.  But I did tell her she sold her ass off."

Lt. Baird:  "We spent three hours and 17 minutes yesterday talking."

Ms. Nelson:  "I was so focused on him, Tyler."

Lt. Baird:  "Do you want to know how many times I tried to direct you away from that yesterday?

Ms. Nelson:  "Maybe a lot, but…"

Lt. Baird:  "Repeatedly saying I'm not talking about saying it to him.  I'm not saying you said it to him.  He didn't say you said it to him.  I repeatedly told you that."

Ms. Nelson:  "Yeah, I gave Lindsey a great compliment."

At 6:30

Ms. Nelson:  "I was just too focused on Tyler because of the situation, not on Lindsey because this was never an issue with Lindsey.

At 11;06

Ms. Nelson:  "When you said it just now it clicked to me.  Like I said, I was more focused when I came in here because I knew the issue was with the salesperson and not the manager.  I was so focused on what I said to him and how I said it … I was not focused on Lindsey at all."

## STANDARD OF REVIEW

"Substantial evidence is relevant evidence that, considering the record as a whole, a

Certified to be a true and correct copy of the original document on file with the Office of the Beaufort County.

Chief Deputy, Beaufort County Sheriff's Office

reasonable mind would accept to support an administrative agency's action." <u>Trimmier v. S.C.</u> <u>Dep't of Labor, Licensing & Regulation</u>, 405 S.C. 239, 246, 746 S.E.2d 491, 494 (Ct. App. 2013). The fact that the record, when considered as a whole, presents the possibility of drawing two inconsistent conclusions from the evidence does not prevent the agency's findings from being supported by substantial evidence.  <u>Waters v. S.C. Land Res. Conservation Comm'n</u>, 321 S.C. 219, 226, 467 S.E.2d 913, 917 (1996).

## FINDINGS OF FACT

Based on the testimony of Brian Baird, Sheldon Epstein and exhibits entered into evidence, we find as a fact:

1.  Ms. Nelson was employed by BCSO at the time of the allegations of misconduct.

2.  That a complaint was filed against Ms. Nelson that she was in uniform, in public, yelling and using profanity, in particular the word ass.

3.  The complaint was from the clerk present in the store the day of the allegations.

4.  That Ms. Nelson was interviewed for this incident two times.

5.  That during the first interview, Ms. Nelson repeatedly denied that she called the clerk an ass or that she used the word ass while in the store.

6.  That during the second interview she was told the specifics of the allegation.   In particular, "What this guy is saying. What he is saying is that while you were talking to Lindsey, you told Lindsey the reason I bought those two air purifiers because you sold your ass off."

7.  That once told the specifics of the allegation she, after an audible laugh, stated "[w]ell, um, yeah, I - I told her how great she was and like I said probably did say to her 'ass'

Certified to be a true and correct
copy of the original document on file with
the Office of Sheriff for Beaufort County.

Chief Deputy, Beaufort County Sheriff's Office

but nothing derogatory for him. But I did tell her she sold her ass off."

8. That she explained that "I was just too focused on Tyler because of the situation, not on Lindsey because this was never an issue with Lindsey.

9. That she further explained that "[w]hen you said it just now it clicked to me. Like I said, I was more focused when I came in here because I knew the issue was with the salesperson and not the manager. I was so focused on what I said to him and how I said it ... I was not focused on Lindsey at all."

10. That although this is an exceptionally close case, it is unclear whether Ms. Nelson was dishonest or whether she was focused on what she said to the clerk and not to Lindsey.

11. Therefore, it was not proven by the substantial evidence in the record that Ms. Nelson engaged in misconduct.

## CONCLUSIONS OF LAW

Based on the testimony of Brian Baird, Sheldon Epstein and exhibits entered into evidence, we conclude as a matter of law:

1. S.C. Code §23-23-80(6) allows the Law Enforcement Training Council to suspend, revoke, or restrict law enforcement certification in accordance with regulations promulgated by the Council.

2. S.C. Reg. 37-025 states in part:
   A.   The Council may deny certification based on evidence satisfactory to the Council that the candidate has engaged in misconduct. For purposes of this section, misconduct means:
      6. Misrepresentation of employment-related information;
      7. Dishonesty with respect to his/her employer;

That pursuant to S.C. Reg. 37-025, Ms. Nelson did not engage in misconduct.

Page 9 of 10

Certified to be a true and correct copy of the original document on file with the Office of Sheriff for Beaufort County.

Chief Deputy, Beaufort County Sheriff's Office

## ORDER

**ORDERED** that Ms. Nelson did not engage in misconduct. However, she is placed on two (2) years' probation. During that two years, Ms. Nelson is to complete 8 hours of ethics classes each year. Proof of the completion of these ethics classes will be submitted to CJA each year. If Ms. Nelson fails to complete this probationary period, then she will have her law enforcement certification permanently revoked.

Chief Mark Keel, Chairman
Law Enforcement Training Council
On Behalf of the Law Enforcement Training Council

April **25**, 2018
June

Page 10 of 10

Certified to be a true and correct copy of the original document on file with the Office of the Clerk for Beaufort County.

Chief Deputy, Beaufort County Sheriff's Office



# BEAUFORT COUNTY SHERIFF'S OFFICE
## FREEDOM OF INFORMATION ACT REQUEST

After your request has been researched, you will receive a confirmation email stating the total fee being charged for the copy(s), calculated in accordance with Beaufort County Ordinance Sec. 2-435.

**Payment must be mailed** (*MONEY ORDERS and CERTIFIED CHECKS only*) along with a copy of the confirmation and a self-addressed stamped envelope to: **Beaufort County Sheriff's Office, P.O. Box 1758, Beaufort, SC 29901.**

The requested copy(s) will be forwarded upon receipt of payment.

Name of Requester _____ Gina Smith, The Island Packet and Beaufort Gazette _____

Preferred Method of Contact: ⊙ Email: _____ gsmith@islandpacket.com _____

○ Phone: _____ 803-414-1340 _____

Mailing Address (Requested copies will be mailed to this address):

Street No & Name: __ The State newspaper 1401 Shop Rd. __ City ___ Columbia ___ State __ SC __ Zip Code __ 29201 __

**REPORT INFORMATION:**

Incident Date: _____

Incident Location: _____

Name(s) on Report (Victim/Suspect): _____

Report Number (if known): _____

If more than one document is being requested, please list additional report numbers (if known) below.

1) Rep# _____    2) Rep# _____    3) Rep# _____

4) Rep# _____    5) Rep# _____    6) Rep# _____

Further explain request as needed below.

* The complete personnel file of former Beaufort County Sheriff's Office employee Selena Nelson.
* The entire internal affairs investigation that resulted in the termination of her employment. Please include any videos.

## * SHERIFF'S OFFICE USE ONLY *

| | |
|---|---|
| Date Request Received: 01-03-18 | Number of Pages Requested: _____ |
| Total Amount Due: _____ | Date Payment Received: _____ |
| Records Released By: _____ | Date Released: _____ |

# SUBPOENA IN A CRIMINAL CASE

| SOUTH CAROLINA GENERAL SESSIONS COURT | COUNTY OF BEAUFORT |
|---|---|
| STATE OF SOUTH CAROLINA | INDICTMENT NO(S). 2015GS0700197, 2015GS0700198 and 2015GS0700225 |
| v.<br><br>AMAR ERNEST LONG, DEFENDANT. | SUBPOENA FOR<br>XXPERSON XX DOCUMENT(S) OR OBJECT(S) |

**TO: Beaufort County Sheriff's Office**

YOU ARE HEREBY COMMANDED to appear in the above named location/court at the place, date and time specified below to produce yourself and the requested documents to the above entitled case.

| PLACE:<br>BEAUFORT COUNTY PUBLIC DEFENDER'S OFFICE<br>POST OFFICE BOX 525<br>BEAUFORT, SOUTH CAROLINA 29901 | DATE AND TIME:<br>AS SOON AS POSSIBLE |
|---|---|

**LIST DOCUMENT(S) OR OBJECT(S):**

**Please provide a copy of any and all documents related to Officer Selina Nelson's personnel records with the Beaufort County Sheriff's Office, to include, but not limited to, polygraph reports, internal investigations, any disciplinary information and resignation/termination information.**

**This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court.**

| CLERK OF COURT | Jerri Ann Roseneau<br>CLERK OF COURT<br>POST OFFICE DRAWER 1128<br>BEAUFORT, SC 29901 | DATE:<br>August 24, 2017 |
|---|---|---|
| (BY)DEPUTY CLERK Brenda J O Shields | | |

THIS SUBPOENA ISSUED UPON
APPLICATION OF THE:

ATTORNEY'S NAME AND ADDRESS

**Jeffrey Stephens, Assistant Public Defender**
**Office of the Public Defender**
**P.O. Box 525, BEAUFORT, SC 29902**
**843-255-5806**

☐SOLICITOR    XDEFENDANT

Certified to be a true and correct
copy of the original in
the Office of the Clerk of
RECEIVED
AUG 24 2017
Beaufort County Sheriff's Office

Michael H.
Chief Deputy, Beaufort County Sheriff's Office

| PROOF OF SERVICE | | |
|---|---|---|
| SERVED 8/24/17 | DATE 8/24/2017 | PLACE LEC-BCSO |
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE hand delivery |
| SERVED BY (PRINT NAME) Christy Compton | | TITLE Legal Assistant |
| DECLARATION OF SERVER | | |

I certify that the foregoing information contained in the Proof of Service is true and correct.

Executed on ___August 24, 2017___
DATE

_____
SIGNATURE OF SERVER

PO Box 525
_____
ADDRESS OF SERVER

Beaufort SC 29901



**OFFICE OF THE SHERIFF**
**BEAUFORT COUNTY**
Post Office Box 1758
Beaufort, South Carolina 29901

**P.J. Tanner**
**Sheriff**

AREA CODE (843)

| | |
|---|---|
| SHERIFF | 255-3200 |
| CHIEF DEPUTY | 255-3192 |
| CRIMINAL RECORDS | 255-3232 |
| CRIMINAL WARRANTS | 255-3228 |
| CIVIL PROCESS | 255-3188 |
| JUDGMENTS | 255-3189 |
| FAX# | 255-9405 |



# FREEDOM OF INFORMATION REQUEST

Name of Individual Requesting Report Copy:
Preferred method of contact:   ☐ Email Address:
                               ☑ Phone: (843) 422-3871
Mailing Address *(Requested copies will be mailed to this address.)*:
*57 Scipio Road, Beaufort SC 29906*

## Report Information:

Incident Date: *07/31/2017*
Incident Location: *Oreck   1008 Harding Island Road, Bluffton SC 29910*
Incident Type:
Name(s) on Report (Victim/Suspect):
Report Number (if known):

If more than one document is being requested, please list additional report numbers (if known) below.

1)  Rep# *OPR I-17004*        2)  Rep# _____        3)  Rep# _____
4)  Rep# _____        5)  Rep# _____        6)  Rep# _____

## Further explain request as needed below:

*I am requesting the entire IA Report/Complainants statements and Final information typed by Lt. Braid. I'm requesting a copy of my written statement as well. Reference OPR-I-17004*

Submit completed form via email to foia@bcgov.net. After your request has been researched, you will receive a confirmation email stating the total fee being charged for the copy(s), calculated in accordance with Beaufort County Ordinance Sec. 2-435. *(See excerpt below.)*

**Sec. 2-435. Copies of official records.**

(a)  *Service charges.* The following uniform service charges are established for the provision of supplying copies of official records requested by private organizations and individual citizens; county departments, other public and governmental agencies are excluded from paying these fees:

(1)  Simple copy of a record:
     a.  First page . . . $ 1.00
     b.  Each additional page . . . 0.25

**Payment must be** <u>mailed</u> **(***MONEY ORDERS and CERTIFIED CHECKS* **only) along with a copy of the confirmation and a self-addressed stamped envelope to: Beaufort County Sheriff's Office, P.O. Box 1758, Beaufort, SC 29901.**

**The requested copy(s) will be forwarded upon receipt of payment.**

---

**\*SHERIFF'S OFFICE USE ONLY \***

| | |
|---|---|
| Date Request Received: *08-14-17* | Number of pages requested: |
| Total Amount Due: | Date Payment Received: |
| Records Released By: | Date Released: |

## BEAUFORT COUNTY SHERIFF'S OFFICE DISCIPLINARY ACTION

**Employee Name:** Selina D. Nelson    **Rank:** Sgt.    **Employee #** 5268    **Warning Date:** 7/31/2017

**Violation:** General Order 113    **Location:** Oreck Home Center Bluffton SC

**Violation of BCSO Policy #(s):** 113 A 2, Section A, 1, e and f; 8, d; 9, a and f.

**Type Violation:** ( X ) Insubordination  ( X ) Conduct  ( ) Substandard Work  ( ) Policy/Procedure Violation  ( ) Attitude
( ) Other: _____

| Previous Violation : | Date of Violation: | Oral | Written | Issued By: |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

**Supervisor Comments:** _____

_____    **Signature:** _____    **Date:** _____

**Branch Commander Remarks:** _____

_____    **Signature:** _____    **Date:** _____

**Division Commander Remarks:** Based upon reviewing Beaufort County Sheriff's Office Internal Affairs Investigation # I -17004, I recommend that Sergeant Selina D. Nelson be terminated from employment.    **Signature:** *Major James W. Bukoffsky*    **Date:** 8/10/2017

**Deputy Chief of Staff Remarks:** I reviewed the information contained in BCSO Internal Affairs Investigation # I - 17004 and I agree that Sergeant Nelson should be terminated from employment with this agency.    **Signature:** *Lieutenant Colonel Allen Horton*    **Date:** 8/10/2017

**Chief of Staff Remarks:** After reviewing Beaufort County Sheriff's Office OPR File # I -17004, concerning the conduct of Sergeant S. Nelson, I agreed that immediate termination is appropriate.    **Signature:** *D. A. Brown*    **Date:** 8/10/2010

**Chief Deputy Remarks:** The conclusion of the Office of Professional Responsibility (Internal Affairs) investigation confirms that Sgt. Nelson conducted herself in an unprofessional manner and further committed insubordination by giving deceptive answers to specific questions regarding her conduct. Immediate termination is warranted.    **Signature:** *Michael M. Hatfield*  8/10/17

**Action To Be Taken:** ( ) Verbal Reprimand ( ) Written Reprimand ( ) Suspension ( X ) Termination ( ) Other

**Amount of Suspension:** N/A

**Suspension Date(s):** N/A

**Employee's Comments:** *Did not want to comment!* MM 8/10/17

_____

I have read this recommendation for Disciplinary Action and understand it. MM

**Employee Signature:** *Did not wish to sign!* MM    **Date:** 8/10/17

**Sheriff's Recommendation:** (✓) Approval    ( ) Disapproval

**Sheriff's Comments:** _____

**Sheriff of Beaufort County**



**OFFICE OF SHERIFF**
**BEAUFORT COUNTY**
POST OFFICE BOX 1758
BEAUFORT, SOUTH CAROLINA 29901

P. J. Tanner
Sheriff

| AREA CODE (843) | |
|---|---|
| SHERIFF | 255-3200 |
| CHIEF DEPUTY | 255-3192 |
| CRIMINAL RECORDS | 255-3232 |
| CRIMINAL WARRANTS | 255-3228 |
| CIVIL RECORDS | 255-3188 |
| JUDGMENTS | 255-3189 |
| FAX # | 255-9405 |
| WEB SITE | www.bcso.net |

August 10, 2017

Mr. Tyler Weaver
106 Oak Park Road
Ridgeland, South Carolina 29936

Dear Mr. Weaver:                                    Ref: OPR# I-17004

This will acknowledge receipt of your July 31, 2017, Citizen Complaint alleging a Code of Conduct violation against a member of this organization. As a result of your complaint, an inquiry into this matter has been completed.

Subsequent to your complaint being received, I directed Lieutenant Brian Baird, Special Investigator to review the complaint, interview all persons involved, whether internally or externally, interview any witnesses and prepare a written statement regarding the validity of the allegations contained therein.

You can have confidence that Lieutenant Baird's report and review of the allegations was done in a fair and impartial manner and the conclusions he reached were as a result of an unbiased and unprejudiced review of the facts. He did found facts supporting the allegations of censurable conduct, which is considered a policy and/or procedure violation. I have reviewed his report; and I concur with his findings. Accordingly, this complaint is being classified as substantiated, and we consider the matter closed. You may have confidence that the appropriate amount of disciplinary action was taken consistent with the findings noted herein.

Thank you for bringing this matter to our attention. If we may be of any further assistance to you, please feel free to contact me at anytime.

Sincerely,

Michael M. Hatfield
Chief Deputy



_Beaufort County Sheriff's Office..."Dedicated, Professional Service."_



**P. J. Tanner**
**Sheriff**

# OFFICE OF SHERIFF
## BEAUFORT COUNTY
POST OFFICE BOX 1758
BEAUFORT, SOUTH CAROLINA 29901

August 10, 2017

| AREA CODE (843) | |
|---|---|
| SHERIFF | 255-3200 |
| CHIEF DEPUTY | 255-3192 |
| CRIMINAL RECORDS | 255-3232 |
| CRIMINAL WARRANTS | 255-3228 |
| CIVIL RECORDS | 255-3188 |
| JUDGMENTS | 255-3189 |
| FAX # | 255-9405 |
| WEB SITE | www.bcso.net |

Ms. Selina D. Nelson
253 University Avenue
Bluffton, South Carolina 29910

Dear Ms. Nelson:

Subsequent to an Office of Professional Responsibility (OPR) investigation a disciplinary action hearing was conducted with you on Thursday, August 10, 2017. Based on the facts and findings contained within the OPR report, it was determined that you violated one or more General Orders which are more implicitly enumerated therein. Your conduct, and the fact that you were found to have shown deception during a polygraph examination, is considered to be contrary to the good order and discipline of this Office and cannot be tolerated.

Accordingly, this letter will provide formal notification of your termination from the Beaufort County Sheriff's Office. Your last day of employment was Thursday, August 10, 2017. Please return any equipment, clothing and/or identification to this Office immediately upon receipt of this notification.

You may want to contact Ms. Emily Stewart, Benefits & Compensation Specialist in Employee Services to assist you in evaluating your options for continued insurance and health/medical benefits. She may be reached at (843) 255-2985 or by email at estewart@bcgov.net.

Your contributions to the Sheriff's Office have been appreciated. It is with regret that we are forced to make this personnel decision.

Sincerely,

Michael M. Hatfield
**Michael M. Hatfield**
**Chief Deputy**

Beaufort County Sheriff's Office
Office of Professional Responsibility
CONFIDENTIAL - DO NOT COPY
Unless Authorized by the Chief Deputy

Certified to be a true and correct copy of the original document on file with the Office of Sheriff for Beaufort County.

Chief Deputy, Beaufort County Sheriff's Office



*Beaufort County Sheriff's Office...* ***"Dedicated, Professional Service."***



South Carolina Criminal Justice Academy
5400 Broad River Road
Columbia, SC 29212-3540

Phennis J. Tanner, Sheriff
Beaufort County Sheriff's Office
PO Box 1758
Beaufort, SC 29901

RECEIVED
Beaufort County Sheriff's Office
AUG 2 2 2018

NEOPOST
08/20/2018
US POSTAGE $000.68⁰
FIRST-CLASS MAIL
ZIP 29212
041M11286963

Certified to be a true and correct
copy of the original document on file with
the Office of Sheriff for Beaufort County.

Chief Deputy, Beaufort County Sheriff's Office

### Table of Contents:

Exhibit #1:     BCSO Complaint Form Submitted by Mr. Tyler Weaver

Exhibit #2:     E-Mail to Mr. Tyler Weaver

Exhibit #3:     E-Mail from Ms. Emma Lipinski

Exhibit #4:     E-Mail to Ms. Emma Lipinski

Exhibit #5:     BCSO OPR Warning (Subject) form for Sgt. Selena Nelson

Exhibit # 6:    Statement of Sgt. Selena Nelson

Exhibit #7:     Modified Statement of Sgt. Selena Nelson

Exhibit #8:     BCSO Polygraph Report for Sgt. Selena Nelson

Exhibit (9):    DVD of the Polygraph

Exhibit (10):   BCSO Administrative Suspension Letter

Exhibit (11):   CD with Recorded Interviews

Exhibit (12):   BCSO General Order 113 A 2

Certified to be a true and correct
copy of the original document on file with
the Office of Sheriff for Beaufort County.

Michael M. Hatfield

Chief Deputy, Beaufort County Sheriff's Office

TABLE OF
CONTENTS



P. J. Tanner
Sheriff

**OFFICE OF SHERIFF**
**BEAUFORT COUNTY**
POST OFFICE BOX 1758
BEAUFORT, SOUTH CAROLINA 29901

AREA CODE (843)
SHERIFF                    255-3200
CHIEF DEPUTY          255-3192
CRIMINAL RECORDS   255-3232
CRIMINAL WARRANTS 255-3228
CIVIL RECORDS          255-3188
JUDGMENTS               255-3189
FAX #                         255-9405
WEB SITE                   www.bcso.net

August 10, 2017

From:    Lieutenant Brian M. Baird; Special Investigator

To:       Chief Deputy Michael M. Hatfield

**Subj:    OPR # I-17004: Alleged Violation of General Order # 113 A 2, Code**
**of Conduct) by Sgt. Selena Nelson**

Exhibit (1):   BCSO Complaint Form Submitted by Mr. Tyler Weaver
Exhibit (2):   E-Mail to Mr. Tyler Weaver
Exhibit (3):   E-Mail from Ms. Emma Lipinski
Exhibit (4):   E-Mail to Ms. Emma Lipinski
Exhibit (5):   BCSO OPR Warning (Subject) form for Sgt. Selena Nelson
Exhibit (6):   Statement of Sgt. Selena Nelson
Exhibit (7):   Modified Statement of Sgt. Selena Nelson
Exhibit (8):   BCSO Polygraph Report for Sgt. Selena Nelson
Exhibit (9):   DVD of the Polygraph
Exhibit (10): BCSO Administrative Suspension Letter
Exhibit (11): CD with Recorded Interviews
Exhibit (12): BCSO General Order 113 A 2

1.  On August 1, 2017, I received a Beaufort County Sheriff's Office Complaint Form Mr. Tyler Weaver completed and submitted via the BCSO Website.  Mr. Weaver states he was working at the Oreck Home Center, 1008 Fording Island Road, Bluffton, SC, around 5:40 pm, July 31, 2017, when Sgt. Selena Nelson, BCSO, came into the store, "acting thuggish and using vulgar language towards him".  He states she was in uniform with a service weapon and a taser.  He relates she had purchased an air purifier with a debit card and was demanding a cash refund for the item.  He states when he informed her he could only refund her debit card she began yelling at him and demanding a cash refund instead. **(Exhibit # 1)**

2.  On August 1, 2017, Chief Deputy Michael M. Hatfield directed the initiation of this Administrative Inquiry after he consulted with Sheriff P. J. Tanner.



**P. J. Tanner**
**Sheriff**

# OFFICE OF SHERIFF
# BEAUFORT COUNTY
POST OFFICE BOX 1758
BEAUFORT, SOUTH CAROLINA 29901

| AREA CODE (843) | |
|---|---|
| SHERIFF | 255-3200 |
| CHIEF DEPUTY | 255-3192 |
| CRIMINAL RECORDS | 255-3232 |
| CRIMINAL WARRANTS | 255-3228 |
| CIVIL RECORDS | 255-3188 |
| JUDGMENTS | 255-3189 |
| FAX # | 255-9405 |
| WEB SITE | www.bcso.net |

August 10, 2017

From:     Lieutenant Brian M. Baird; Special Investigator

To:       Chief Deputy Michael M. Hatfield

**Subj:    OPR # I-17004: Alleged Violation of General Order # 113 A 2, Code of Conduct) by Sgt. Selena Nelson**

Exhibit (1):   BCSO Complaint Form Submitted by Mr. Tyler Weaver
Exhibit (2):   E-Mail to Mr. Tyler Weaver
Exhibit (3):   E-Mail from Ms. Emma Lipinski
Exhibit (4):   E-Mail to Ms. Emma Lipinski
Exhibit (5):   BCSO OPR Warning (Subject) form for Sgt. Selena Nelson
Exhibit (6):   Statement of Sgt. Selena Nelson
Exhibit (7):   Modified Statement of Sgt. Selena Nelson
Exhibit (8):   BCSO Polygraph Report for Sgt. Selena Nelson
Exhibit (9):   DVD of the Polygraph
Exhibit (10):  BCSO Administrative Suspension Letter
Exhibit (11):  CD with Recorded Interviews
Exhibit (12):  BCSO General Order 113 A 2

1. On August 1, 2017, I received a Beaufort County Sheriff's Office Complaint Form Mr. Tyler Weaver completed and submitted via the BCSO Website.  Mr. Weaver states he was working at the Oreck Home Center, 1008 Fording Island Road, Bluffton, SC, around 5:40 pm, July 31, 2017, when Sgt. Selena Nelson, BCSO, came into the store, "acting thuggish and using vulgar language towards him".  He states she was in uniform with a service weapon and a taser.  He relates she had purchased an air purifier with a debit card and was demanding a cash refund for the item.  He states when he informed her he could only refund her debit card she began yelling at him and demanding a cash refund instead. **(Exhibit # 1)**

2. On August 1, 2017, Chief Deputy Michael M. Hatfield directed the initiation of this Administrative Inquiry after he consulted with Sheriff P. J. Tanner.

Certified to be a true and correct copy of a document on file with the Office of Sheriff for Beaufort County.

Michael M. Hatfield
Chief Deputy, Beaufort County Sheriff's Office

3. On August 1, 2017, I reviewed Mr. Weaver's Complaint. Mr. Weaver states he was the Service Technician and only employee at the Oreck Home Center when Sgt. Nelson came into the business. He states she purchased two air purifiers over the last two months and now she claimed they were malfunctioning and she wanted a cash refund for one of them. He said he checked the air purifier and determined the filter was dirty, he cleaned it and it began operating properly. He said Sgt. Nelson said she was not happy with it and demanded a cash refund. He said even though it was no longer under warranty he began the process of giving her a refund. He checked the purchase records and determined Sgt. Nelson paid for the purifier with a credit/debit card, so per his business policy he had to make the refund to the same credit/debit card. He said he asked for the card and informed her he had to refund the card and could not give her cash. He states Sgt. Nelson began yelling at him, demanding a cash refund and began to use profane language towards him. He said her behavior was intimidating because she is a law enforcement official, in uniform with a Glock service weapon and taser on her at the time she was yelling and cursing at him. He said he tried to explain to her he had to refund the card, but she continued to yell she wanted cash because the money was taken out of her account already and that a debit card is the same as cash. He said due to her, "thuggish" behavior he tried calling the Manager of the Savannah Oreck Store, but the store manager, Lindsay did not answer his telephone call. He said Sgt. Nelson then used her own cellular telephone and called Lindsey who answered her call. He said Sgt. Nelson put the call on speaker and he could hear them both speaking loudly and they were trying to talk over each other. He said Sgt. Nelson lied to Lindsey about what he did to try to resolve this issue and he tried to tell Sgt. Nelson he did not do what she said he did. He then states he called Barbara, one of the owners of the store, to inform her of the issue he was having. He said Barbara told him he could only refund the original payment method. He said Barbara told him she was with Brad, the other owner and said she would have Brad call back shortly. Mr. Weaver states Sgt. Nelson was still yelling she wanted cash and she wanted it now. He said Brad then called the store and he tried to have Sgt. Nelson speak with the owner direct, but Sgt. Nelson refused saying she didn't do business with him and she did not want to talk with him, she only wanted a cash refund. He said Brad tried to offer some solutions to the problem, with one issue being the store doesn't keep very much cash on hand and Brad did not think he had enough cash to refund her the $317.99 she wanted. Brad said to offer her $100.00 cash and to refund her the remaining balance to the card and she refused saying she wanted all her refund in cash now. He asked her again to speak with the owner and again she refused. He said she then began chanting, "I want cash money". He said Brad then recommended I call

the police and I advised him she is the police and she is in uniform. Brad explained to him if he gave her a full refund that would leave the store with zero cash on hand and it would take a day or two to get him a petty cash check to replace the limited operating cash they keep on hand. He said Brad could hear her yelling over the phone and finally said to give her the cash refund to get her out of the store. He said he told Sgt. Nelson he was going to give her the refund and she interrupted him by waiving her arms into the air and yelling, "No you gonna give me cash money". He said he told her he would give her $318.00 cash and then went to the back of the store to count it out. He relates she said she was not going to steal from him when he went to count the money. He said he counted the money then returned to the counter where he counted the money to Sgt. Nelson and told her he needed her to sign a receipt acknowledging she received the cash. He said Sgt. Nelson took the cash, refused to sign the receipt and said she would be back the next day to return her other air purifier and would sign for both refunds then. He said he felt like this was a police shakedown or robbery. **(Exhibit # 1)**

4. On August 1, 2017, I sent Mr. Weaver an E-Mail acknowledging receipt of his complaint and informing him I would look into this matter and contact him later in the week. **(Exhibit # 2)**

5. On August 4, 2017, I spoke with Mr. Weaver to arrange for an interview and he requested to handle this over the telephone. He advised parts of his conversation with Sgt. Nelson were heard by Brad and Barbara the owners of the store. He related he would contact them and ask them to contact me. He further advised there was a customer in the store for the beginning of this incident who witnessed part of the contact. The telephonic interview was recorded and saved to a CD. **(Exhibit # 11)**

6. On August 4, 2017, I was contacted by Mr. Bradley Blake, the Co-Owner of the Oreck Home Center. He related he was contacted by his employee, Mr. Tyler Weaver, over an unhappy customer demanding a cash refund. He said while speaking with Mr. Weaver he could hear a woman yelling she wanted a cash refund. He said it appeared to him the woman was in dire need of cash for something and had no other options. He said the woman sound irrational. He said during the conversation he tried to offer some options because they just do not keep a lot of cash on hand and he did not think the store had enough cash to make the full refund and then still have any cash on hand to operate if needed. He said each option he offered the women continued to yell she wanted cash money. He said at one point he advised Mr. Weaver to call the police because of the way the

woman was yelling and Mr. Weaver advised him the lady is a police officer in uniform with a gun and a taser. Mr. Blake said he was shocked to learn the woman was a law enforcement official. He said when he learned this he knew they would have to report this unprofessional and irrational behavior to the sheriff's office. He said he finally told Mr. Weaver to give the woman a cash refund in an effort to get her out of the store. He said he asked to speak with the woman several times and she refused to talk with him on the telephone. He said he doesn't know what was happening in the woman's life, if she was having a bad day and this was a one-time incident, but he knew the sheriff's office needed to be aware of her behavior so it could be addressed. The call was recorded and saved to a CD. **(Exhibit # 11)**

7. On August 4, 2017, I reviewed the BCSO Southern Enforcement Section Duty Roster and determined Sgt. Nelson was working the night shift on July 31, 2017, so she was on her way to work when she stopped by the Oreck Home Center.

8. On August 4, 2017, I contacted Captain JoJo Woodward, BCSO, and he reported that he directed Sgt. Nelson not to return to the Oreck Store until further notice because there was a complaint made.

9. On August 7, 2017, I left a voicemail for Sgt. Nelson to call me. She returned my call and I scheduled her interview for 8:30 am on August 8, 2017. During the call she asked what this was in reference to and I told her there was a complaint against her. She then asked which one, I told her it was from the Oreck Store and she said OK. The call was recorded and saved to a CD. **(Exhibit # 11)**

10. On August 8, 2017, I received a copy of an E-Mail that was sent to Chief Deputy Michael M. Hatfield by a Ms. Emma Lipinski in July 31, 2017. She states she is writing with grave concern about a BCSO Officer, Selena Nelson. She states Deputy Nelson displayed, "vulgar, self entitled behavior" in uniform and she felt she had to inform someone of this behavior. She relates while at the Oreck Store in her BCSO uniform, Deputy Nelson behaved in a bullying, nasty, vulgar way and she used profanity and intimidating ways to bully monies from a clerk at the vacuum center. She further states the clerk was a young man who acted polite and professional and seemed to follow all of his stores procedures to include calling the owner when he could not resolve the issue with Deputy Nelson. She states Deputy Nelson demanded a cash refund when she was only entitled to a refund to her credit card, while using profanity to include the word, "Ass" and yelling, "cash money" as what she wanted. She felt Deputy Nelson was bullying

this young man and her behavior bordered on abuse of power as she was in uniform with her weapons, but stated she was off duty. I sent Ms. Lipinski and E-Mail in reply asking her to contact me. A copy of both E-Mails are attached. **(Exhibit # 3 and # 4)**

11. On August 8, 2017, I interviewed Sgt. Selena Nelson at the BCSO Office. Prior to asking her any questions I provided her with a BCSO Office of Professional Responsibility Warning (Subject) Form. She read the form and stated she understood it and did not have any questions. She then signed the form indicating the same. I asked her if she recalled going to the Oreck Home Center on July 31, 2017, and she said she did. She said she purchased two air purifiers from that store within the last month and one of them stopped working. She showed me a picture on her cellular telephone of an error code displayed by the purifier. She said the store manager, Lindsey, from whom she purchased the purifiers gave her a business card with her cellular telephone number if she had any problems in the future. She called Lindsey and Lindsey told her to take the purifier back to the store to have it checked. She claimed Lindsey told her they could fix it, replace it or give her a refund. Sgt. Nelson said she dropped the purifier off at the store to be checked and a couple days later she was called and told it was ready to be picked up. She said the clerk told her it wasn't under warranty but he fixed it. She claimed she told the clerk she did not want that purifier back, that she wanted a new one or a refund. Sgt. Nelson said on July 31, 2017, she stopped by the store while in uniform because she was on her way to work. She said the clerk told her he fixed the purifier and she stated she did not want that one back because it had an internal issue according to Lindsey. She said she told the clerk that Lindsey, the manager, told her she could get a new one, a different one or receive a refund. She claimed she looked at a different purifier and said she wanted a different one and was willing to pay the difference because it was more expensive than the one she originally purchased; however, they did not have any of the other model in stock. Sgt. Nelson states she told the clerk she just wanted a refund then and he went to look up the transaction. The clerk told her she purchased it with a visa card so he would need to refund the purchase to that card and asked her for it. She said she told him she did not have it with her and she wanted cash instead. He told her he had to refund it to the same manner as the original purchase so he would have to refund the card. She said she showed him on her phone that the money was taken out of her account on the same day she purchased it and said using a debit card is the same as using cash. She said the clerk told her he did not have enough cash on hand in the store to make such a large refund. She said the clerk told her he could only refund the card and sat

Beaufort County Sheriff's Office
Office of Professional Responsibility
CONFIDENTIAL - DO NOT COPY
Unless Authorized by the Chief Deputy

there looking at her nonchalantly. She said she did not get upset but it did bother her the way he was acting and she continued to ask politely for a cash refund. She claimed she said, "Sir, may I please have a cash refund?" She said she did not raise her voice or yell at the clerk. She said the clerk tried to call Lindsey, the store manager but she did not answer. She said she asked the clerk for Lindsey's telephone number and called her. She said Lindsey answered and told her she could have a cash refund. She claimed Lindsey told her she already told the clerk she could have a cash refund and when she told the clerk he asked Lindsey and Lindsey said to do the right thing. I asked her if she had Lindsey's number or if the clerk provided it and she said the clerk gave her the number. I then advised her there was a customer in the store that witnessed part of their interaction and she said a lady came in and she stepped aside to let the clerk wait on her. She denied saying anything in front of the lady and waited patiently until the lady left to continue her conversation with the clerk. I advised Sgt. Nelson the lady heard part of the conversation and she was shocked with the manner she was talking to the clerk. I informed her the lady's statement and the clerk's statement corroborated each other. I advised her it was human nature to become upset at times and everyone makes mistakes at time. Sgt. Nelson claimed she did not get upset and did not yell at the clerk. I advised her the clerk and the lady both said she used vulgar and profane language while in uniform and acted extremely unprofessional. Sgt. Nelson said she never swore at the clerk. I then advised her I did not say she swore at the clerk, only that she used profanity and she replied she did not use any profanity towards anyone. I then informed her that both the lady and clerk said she used the word. "ass", and she said she did not call anyone an ass. I again said no one said she called anyone an ass, only that she used the word and Sgt. Nelson said she would never use the word ass towards someone. I then advised her she appeared to be playing semantics with this and she did not understand, so I explained the meaning of semantics and she said she understood what I was saying. I then asked her if she ever said the word ass, while inside the store during this incident and she said she did not use it towards anyone. I told her that was not my question, that my question is if she said the word or not and she then said not that she recalled. I then informed her that I have had to speak with a lot of people about situations and by far the majority of the people we have lost as a result of an investigation was not for what happened but for minimizing or lying about what happed. She said she understood and said she is telling the truth and it hurts her to think I don't believe her. She said she had never lied about anything she did and she has actually had people lie about her in the past and she did not fight it, but accepted punishment for things she did not do to make it easier. I again advised her the clerk and a customer made statements as to what they

observed and heard and the store's owner told me what he heard while speaking with the clerk during this incident. Sgt. Nelson said the clerk did call someone, but initially told her it was the finance guy and she refused to speak with him because she did not deal with him during the purchase. I advised her that Brad, the owner said he heard her yelling, "I want cash" repeatedly and she said she did not chant those words. She said the clerk eventually offered to refund her $100.00 cash and refund the rest to her card, but she again said she refused. I advised her that the store owner told the clerk to hang up and call the police because of the manner in which she was acting and when the clerk advised him the customer is a law enforcement officer in uniform with a gun and taser he said he was shocked a law enforcement professional would act in that way. He said it appeared to him she was in need of cash and had no other way to get it. She claimed she did not need cash, that she had plenty of cash on her because she was about to go on duty. She claimed she always empties her wallet of credit cards and such prior to going on duty in case she loses it, but does carry cash. She said when the clerk finally informed her it was the owner on the telephone, she agreed to speak with him. She said the owner finally decided to let her have a cash refund and told the clerk to give her the refund in cash. I told her I only want the truth and did not want her to admit to doing something she did not do. I told her to look at it from my perspective, three different people were describing her actions and comments the same way and she is claiming she did not do or act that way. She said she understood what I was saying but she can't help what they perceived or thought. She said she talks a certain way and possibly they could not understand her or had some other perception of her. I told her two of the people said she said ass and all three said she was yelling, "I want cash". She said she did not yell I want cash, she was saying, "Would you please give me cash". I told her that because the statements were so drastically different they only way I could see to resolve this issue was to give her a polygraph examination. I advised her that if she lied in the polygraph examination I expected her to be terminated and asked her not to lose her career over something like this. She said she has known plenty of people she knew were innocent fail a polygraph. I asked her if any of those where here with BCSO and she said no. I told her other places may use different formats for polygraph that at less reliable, but here we only use the federally approved polygraph formats. I then told her to write a brief statement about this incident and that I needed her to address her denial of ever saying the word, "ass" while inside that store and that she was not demanding and yelling, "I want cash". She subsequently wrote statement. In the statement she wrote, "I at no time in front of any customer yelled at the clerk or called him and "Ass"." I then told her that I asked her to include in her statement she never used the word ass not that she did

Beaufort Sheriff's Office
Office of Professional Responsibility
CONFIDENTIAL DO NOT COPY
Unless Authorized by the Chief Deputy

Certified to be a ...
copy of the original ...
the Office of Sheriff ...

Chief Deputy Beaufort County ...

not use it towards a person. She then took her statement and added, "I did not use the word ass towards him or while anyone was inside the business". I reviewed this and again advised her that I felt she was trying to downplay the use of the word ass with semantics and she said she wrote she did not use that word. She also said after speaking with Capt. Woodward she did speak with Lindsey and told her if she could contact Capt. Woodward to please feel free to do so. I continued to speak with her after she completed her statement and advised her that I felt based on the statements of the other three people that she was not being completely honest and I was worried that she was going to lose her career over a foolish mistake, she then said what if I were to say they are all telling the truth? She said if I say that can I just take my punishment and move on. I asked her is that the truth and she said no. I told her I did not want her to lie either way, I just wanted her to tell me the complete truth about what happened in that store and she said she did. I directed her to return to my office on August 9, 2017, at 12:45 pm for her polygraph. The interview was recorded and saved to a CD. The CD, OPR warning form and Sgt. Nelson's written statement are attached. **(Exhibit # 5, # 6 and # 11)**

12. On August 8, 2017, I contacted Mr. Weaver and asked him about Sgt. Nelson's use of the word. "ass". He said he believes she was talking with Lindsey on the telephone and made a comment about Lindsey, "selling her ass off". This call was recorded and saved to a CD. **(Exhibit # 11)**

13. To date Ms. Lipinski has not replied to the E-Mail I sent her asking her to contact me regarding the E-Mail she sent to Chief deputy Michael M. Hatfield about this incident.

14. On August 9, 2017, I met with Sgt. Nelson prior to the polygraph. I asked her if there was anything she wanted to change or retract from our interview and her statement the day before. She said she has been thinking about this incident ever since then and she is sure she never used the work ass towards anyone in the store. I informed her that I made a couple additional calls and was able to determine exactly how she is alleged to have use the word and the clerk states it was a comment while she was speaking with Lindsey. She said she did not say ass, but did say ask while speaking with Lindsey and thinks he misunderstood it. I advised her the word ask would not have been part of the sentence as he described it. She said she did not say that word while speaking with Lindsey.

15. On August 9, 2017, Capt. Matthew Averill, BCSO administered a polygraph examination on Sgt. Selena Nelson regarding the truthfulness of her written

statement from August 8, 2017. Prior to commencing the examination Capt. Averill asked Sgt. Nelson to read her statement and make any changes she wanted to ensure everything was completely true in the statement. She made a couple minor changes and added that she never used the word ass. After reviewing and scoring the polygraph examination results, it was Capt. Averill's opinion that Sgt. Nelson's polygraph examination results contained signs of attempted deception to the below relevant test questions.

> (Q). Did you lie in that statement you wrote?
> > (A). No.
> (Q). Did you lie in that statement you wrote for Lt. Baird?
> > (A). No.

When Capt. Averill advised Sgt. Nelson of the results of the polygraph examination she only said, "OK". The amended statement, Polygraph Report and a DVD of the examination are attached. **(Exhibit # 7, # 8 and # 9)**

16. On August 9, 2017, I interviewed Sgt. Nelson regarding the results of the polygraph examination. I reminded her the same OPR Warning (Subject) Form rights still pertain and she acknowledged that she understood that. I informed her that the polygraph clearly showed she was not completely honest in her statement and now the only question was what she is not telling the truth about. She said she felt it had to do with the yelling. She said she never raised her voice to the utmost level possible. I advised her that she is still playing the semantics game she tried to play yesterday and that she knows there is different levels of yelling. I told her some people can perceive things differently depending on how they are raised and such, but we have three people saying she was yelling and her saying she wasn't. Sgt. Nelson said sometimes people get together to arrange their story. I asked her if she truly believed these people conspired to arrange their story and she said it happens. I then told her to think about talking with Lindsey on the telephone as that is when they said she used the word ass. She said no, she only said ask and I told her that would not work in the sentence they said it was used. She said she did not think she used the word ass. I asked her about telling Lindsey something about how hard they worked and using the word ass in more of a complimentary manner as compared to a derogatory manner. She then laughed and said she did say something to Lindsey about working her ass off. I asked her why she did not tell me that yesterday or before the polygraph and she said she did not think of it. I told her all of this could have been avoided had she told me the truth yesterday and she said she understood. The interview was recorded and saved to a CD. **(Exhibit # 11)**

17.   On August 9, 2017, Lieutenant Colonel Allen Horton, BCSO, issued the attached Administrative Suspension Letter to Sgt. Nelson.  **(Exhibit # 10)**

**Synopsis:**
On July 31, 2017, Mr. Tyler Weaver submitted a BCSO Citizen's Complaint via the BCSO Webpage Link.  He reported Sgt. Selena Nelson came into the Oreck Home Center in Bluffton, where he was the only employee working at the time. He states Sgt. Nelson was unhappy with an air purifier she purchased and inquired about replacing it, or getting a refund.  He said she eventually said she wanted a refund, so he checked the purchase records and saw she purchased it with a Visa card.  He asked for the card so he could credit her account and she demanded a cash refund.  He said he tried to tell her he had to refund it to the same manner as the original purchase; however, she began raising her voice and demanded a cash refund.  He said he was intimidated by her because she was in her uniform with her service weapon and taser visible.  He said she asked for the manager so he tried to call her, but she did not answer the telephone.  He said Sgt. Nelson then removed a business card from her wallet and used her own cellular telephone to call the manager, Lindsey.  He said while she was speaking with Lindsey, Sgt. Nelson lied to Lindsey about how he tried to assist her.  He said he tried to explain to Sgt. Nelson that the store doesn't keep enough cash on hand to refund her the full $317.99 for the purifier, but she would only say, "I want cash!" He said he eventually called the store owner and spoke with Barbara who told him he could only do a refund to the original purchase method.  He said Brad the other owner called him a few minutes later and heard Sgt. Nelson yelling.  He said he had to explain to Brad that Sgt. Nelson was a police officer in uniform with a gun and taser.  He said Brad authorized him to refund Sgt. Nelson $100.00 in cash and to refund the remainder to the card in an effort to appease her.  He wanted to do it that way because if he refunded her the entire amount in cash, the store would not have any cash on hand for the next business day.  He related she still refused by saying, "I want cash."  After several more minutes of this, Brad finally said to give her all of the refund in cash just to get her out of the store.  Mr. Weaver said he counted out the money and asked her to sign a receipt that she received it, but she walked out of the store saying she would sign it tomorrow when she brought her other purifier back for a cash refund.  I interviewed Mr. Weaver and he confirmed his complaint.  I spoke with Mr. Brad Blake and he confirmed hearing a woman identified as Sgt. Nelson yelling she wanted cash and acting extremely unprofessional for a law enforcement official.  I received an unsolicited E-Mail from a Ms. Emma Lapinski reporting she was in the store, observed and heard the way Sgt. Nelson was acting towards the clerk.  She described it as thuggish and

bullying to the point of intimidating the clerk into giving a cash refund Sgt. Nelson was not entitled too.  I spoke with Lindsey Vargas and she said when she was called by Sgt. Nelson from the store she was at dinner and could not hear most of what Sgt. Nelson was saying.  I asked her if she heard Sgt. Nelson use any profanity and she said she did not hear her say anything profane, but she could not hear everything she was saying.  I interviewed Sgt. Nelson and she denied she ever yelled at or even raised her voice considerably toward Tyler, the clerk.  She was adamant she did not use any manner of profanity towards Tyler or anyone else in the store.  When asked if she ever said the word, "ass" while she was inside the store she said not that she recalled.  She wrote a statement to that effect.  Sgt. Nelson was administered a polygraph examination as to the truthfulness of her written statement.  She reviewed the statement prior to the polygraph and made several minor changes to include that she never used the word ass while she was in the store.  Sgt. Nelson's polygraph results showed signs of attempted deception regarding if she lied in her written statement.  When informed of the results of the polygraph examination she said, "OK".  I interviewed her after the polygraph and she admitted to raising her voice; however, said she never raised it to the highest possible level and she eventually admitted to using the word ass in a non-derogatory manner while talking with Lindsey on the telephone in the store.

**Conclusion(s):**

This Administrative Inquiry determined Sgt. Selena Nelson acted in an unprofessional and inappropriate manner while wearing her BCSO uniform in the Oreck Home Center on July 31, 2017.  She subsequently lied about her actions and language in the store.  Sgt. Nelson was administered a polygraph examination and only after that did she admit she raised her voice and used the word ass in the store.

The allegations against Sgt. Selena Nelson are Substantiated for violations of BCSO General Order 113 A 2, Section A, 1, e and f; 8, d; 9, a and f.

Brian M. Baird, Lt.
Special Investigator OPR

Beaufort County Sheriff's Office
Office of Professional Responsibility
CONFIDENTIAL - DO NOT COPY
Unless Authorized by the Chief Deputy

Certified to be a true and correct copy of the original document as filed in the Office of Sheriff in Beaufort County

Chief Deputy, Beaufort County Sheriff's



Certified to be a true and correct
copy of the original document on file with
the Office of Clerk, for Beaufort County.

Chief Deputy, Beaufort County Clerk Court

**EXHIBIT 1**

**Baird, Brian**

| | |
|---|---|
| **From:** | BCSO Website <BCSOWebsite@bcgov.net> |
| **Sent:** | Monday, July 31, 2017 9:53 PM |
| **To:** | Baird, Brian; Hatfield, Michael; Brown, David |
| **Subject:** | Complaint Form |

Type_of_Complaint: Citizen Complaint
Case_Number___Event_Number:
Last_Name_: weaver
First_Name: tyler
Race: Caucasian
Sex: Male
DOB:▆▆▆▆▆▆
Address: 106 oak park rd ridgleand sc
Phone_Number: 8433380869
Email_Address: Darthdoily@aol.com
Business_Address: oreck home center 1008 Fording Island Rd, Bluffton, SC 29910
Nature_of_Complaint: Conduct of officer not on duty but in uniform with service weapon at a local business demanding "cash money"
Location_of_Complaint: bluffton sc
Date_and_Time_Occurred: 1740 7/31/2017
Synopsis_of_Complaint: Good evening , A police officer, off duty in uniform came into my place of employement , where I am a service tech , where she had purchased an air purifier. She behaved thuggish and intimidating, conduct unbecoming of an officer, she used vulgar language such as "ass" and "screwed" and "Crap". She had her service glock and taser on her person, she demanded cash ,and frankly it felt like a police shakedown or robbery. she refused the credit refund. she refused to leave. she demanded cash money cash money . After receiving a cash refund inapproprietly, She told me she would be back to get her another cash money refund tomorrow. At best this is abuse of power. at worst it is extortion and threatening. She repeatedly stated she had to get to work. And she would be back for more cash money tomorrow. I am now nervous that this police officer will retalate against me for this complaint. I am just a service tech at a vaccuum store where she purchased an air purifier. If she behaves this way with a local business,at the person working the cash register , i fear how she handles actual police matters. I drove home fairly nervous, as i feared retaltation from a police officer . At 1740 , Officer Nelson pulled up, in her squad vehicle , in full uniform. She entered the store on her cell phone , having a conversation with an unknown person. She concludes her conversation with " I'm at the vacuum store, bye". She approached the counter, standing next to the aroma II . I said " Good evening, how can I help?" . Office nelson was shuffling through her phone at this time. Another customer came in a this time, who had a vacuum with a handle issue. . I repaired the vaccum , she paid 14.95 and then left. Officer Nelson stated " I'm here about the air purifier, what's going on with it". I replied " unfortunately it is not under warranty. The cell was dirty , causing the red light to go on, as it should. I cleaned the cell and it is now functioning as it should. " She replied it shouldn't have gotten dirty that quick and it should be replaced . " I told her i cant replace it under warranty. there was nothing wrong with it, it was just dirty . I can get you another machine from a different location . She replied " Its beyond that , i dont see why you wont replace i only had it 2 weeks it shouldn't be that dirty " I told her it was doing its job, cleaning the air and that i can not replace a machine if it is working as intended. I offered to get her a different machine from another location. She said i want a refund " . I said Ok. I pulled her ticket up in the system , began writing out the credit memo to give her refund , and i requested the visa card she originally paid with . " Officer Nelson stated it was taken out of her account , 317.99 , taken on 7--19-17 and she showed me on her phone. She stated" it was debited from her account, debit is the same as cashe and she wants a cash money refund" I explained to her , i can provide a

CONFIDENTIAL DO NOT COPY
Office of Professional Responsibility
Unless Authorized by the Chief Deputy

1

refund, on the original method of payment, but i can not refund cash. she stated aggressively ,"no, i want cash money" . I explained again, i can not do a cash refund , and i am happy to refund to her visa. I explained debit is not the same as cash and I can only refund to the original method of payment, which was a visa card. She asked to speak to Lindsay , who she purchased her first air purifier from about 1.5 months ago in Savannah. I told her i will call Lindsay. i went into the back with the work phone and called Lindsay. Savannah location was closed at this time . I called Lindsay's cell. I left a voicemail telling her selena neslon is here in regards to her air purifier and please call me asap. I returned to the front, phone still in hand . I told Officer Nelson i called Lindsay, i left a voicemail and now all we can do is wait. She decided to call Lindsay herself, pulled out her wallet and said she had Lindsay' cell phone number. while she was calling Lindsay ,. i started to collect trash , vacuum benches, begin closing cleanup. I went back up front . Officer nelson was speaking with Lindsay . She had it on speaker. They were speaking over each other very loudly. She told Lindsay that I (Tyler) was going to call the other locations to see if they had any air purifiers to replace hers. she called Charleston and said i did not call them and she had to call herself , they did have one and she would go on her day off. I NEVER stated to her i called Charleston. This is a bold faced lie. I went into the back, called Barbara bell, owner at 1752 . I relayed to Barbara what the issue was. She reiterated to me i can only refund to the original method of payment. she was traveling with brad, and asked to call me back shortly so they could discuss. I want back to the front . Officer Nelson demanded her refund , in CASH MONEY and she wants it now, in CASH MONEY . I reiterated i can only refund to original method of payment . She aggressively said "CASH MONEY" she then said debit was the same as cash , to which i told her , no it is not. i can only refund to the card used to purchase. The store phone rang, it was Barbara 's umber. Brad was on the line . I told Officer Nelson the owner is on the line, he requested to speak with her. Officer Nelson refused to talk to him, stating Loudly " i dont wanna talk to him. I didn't do bidness with him i dont want to talk to him " . Brad heard all this over the line. I then walked into the back after telling him she didnt want to speak to him. We discussed solutions. 1 of which was a 100 dollar cash refund and remaining balance done as a credit refund back to the original card. I offered this to Officer Nelson , who demanded CASH MONEY , ITS THE SAME AS CASH AND I WANT CASH MONEY . Brad heard this , and also indicated debit and cash are NOT the same. Officer Nelson refused to leave. Please recall she is in full uniform, with taser and service weapon. Brad requested again to speak to her . I told officer nelson again, this is the owner, he handles all the finances, and he would like to speak with you . Officer nelson stated " I DONT WANT TO I DIDNT DO BUSINESS WITH HIM I WANT CASH MONEY" . I put the phone down, with brad still on the line as she was behaving aggressively , trying to intimidate with her uniform and i wanted a witness . I told her again , brad wanted to speak wither her. She began chanting again I WANT CASH MONEY . I got back on with brad, who said she is being belligerent , and if he was in the situation he would call the police. I went into the back , she still has Lindsay on her cell at this time. She said " Now he wants me to talk to the owner , i didnt do bidness with him i want my cash money . " I walked into the back with the phone (brad) to discuss my options. Brad explained we couldnt give her cash, it puts the drawer at zero , and couldn't get a check to me until weds. and i don't have withdraw power for the store. I told brad she bought 2 air purifiers total in a 2 month time period. One was purchased in bluffton, the one she is here a bout now, the other was purchased in Savannah 1.5 months ago, same price , in cash. He said since she paid cash in savannah for one unit, and is refusing to leave, to give her 317.00 in cash . I said ok. I hung up, went back up front. I said alright , im going to give you the refund. she interrupted me waving her arms about, yelled NO YOU GONNA GIVE ME CASH MONEY . I said i am giving you 318.00 cash refund . She continued to speak on the phone to Lindsay . I had money pulled out of the drawer. I said i am counting this in the back. She said " I'm not going to steal from you . she says into the phone he wants to count the money in the back so he dont get screwed". So i counted out the 318.00 . I counted it 3 times, as she was having a LOUD conversation with Lindsay and it was s difficult to concentrate. I start a credit refund for cash , wrote it out 318.00 on 7-31 ,and gave her something to sign. She turned around , to walk out. I told her i needed her to sign for the refund in cash. She said " I will be back tomorrow to return my other purifier i will sign both then". Brad called back at this point. I told him she refused to sign and will sign tomorrow. I want it noted , she behaved thuggish and intimidating, conduct unbecoming of an officer, she used vulgar language such as "ass" and "screwed" and "Crap". She had her service glock and taser on her person, she demanded cash ,and frankly it felt like a police shakedown or robbery. she refused the credit refund she refused

2

to leave. she demanded cash money cash money . She told me she would be back to get her other refund tomorrow. At best this is abuse of power. at worst it is extortion and threatening. She repeatedly stated she had to get to work, and she would be back for cash money again tomorrow. I can not give her cash . She paid with a cc. I am just the service tech , we dont keep funds in the drawer of that size. I am fearful she will embellish and arrest me for false reasons if i do not pay her money. I drove home fairly nervous, as i feared retaltation from a police officer .

Certified to be a true and correct copy of the original document on file with the Office of Sheriff for Beaufort County.

Michael R. Hatfield

Chief Deputy, Beaufort County Sheriff's Ofc.

**EXHIBIT 2**

Certified to be a true and correct
copy of the original document filed in
the Office of Sheriff for Beaufort

Chief Deputy Beaufort Clerk

**Baird, Brian**

| | |
|---|---|
| **From:** | Baird, Brian |
| **Sent:** | Tuesday, August 01, 2017 12:53 PM |
| **To:** | darthdoily@aol.com |
| **Subject:** | Complaint |

Mr. Weaver

I am Lt. Brian Baird with the Beaufort County Sheriff's Office.  I handle most complaints for Sheriff Tanner. I am out of my office attending training until Friday.  I have spoken with the Chief Deputy and he spoke with the Sheriff about this.  I will contact you Friday regarding your complaint, I apologise for the delay due to training.

Lt. Baird

*Sent from my Verizon 4G LTE Droid*

Beaufort County Sheriff's Office
Office of Professional Responsibility
CONFIDENTIAL - DO NOT COPY
Unless Authorized by the Chief Deputy

Certified to be a true and correct
copy of the original document on file with
the Office of Sheriff for Beaufort County.

Chief Deputy, Beaufort County Sheriff's Office

1

**EXHIBIT 3**

Certified to be a true and correct copy of the original document on file with the Office of Records and Reports for Beaufort County.

Chief Deputy, Beaufort County Sheriff's Office

**Hatfield, Michael**

| | |
|---|---|
| **From:** | emarie [fort32@atmc.net] |
| **Sent:** | Monday, July 31, 2017 7:00 PM |
| **To:** | Hatfield, Michael |
| **Subject:** | Conduct unbecoming of Deputy incident |

Good Evening

I write to you today with grave concern. One of your Officers, Selena Nelson (as read from her uniform) conducted herself in a way today that was most embarrassing for the Beaufort Sheriff Department.  Normally, , I would pay little attention to the type of vulgar, self entitled behavior all too common today . However, as she was in full uniform, representing the Police department in a non-work related capacity , I felt it was my duty as a citizen,a veteran and the adult child of a police officer, the niece of a police chief and and an advocate of all our fine and brave police officers to write to you.  Deputy Nelson , while in uniform , behaved in a bullying, nasty, vulgar way at a local business today. She used profanity , intimidation ( full uniform, gun and taser on display) , to bully monies out of the clerk at the local vaccum service center . The young man was polite, followed all the appropriate procedures and policies including calling his store owner, who was also privy to Deputy Nelson's nasty display .  Your officer demanded  monies in cash , to which she was not entitled, used profane words such as "ass" , raised her voice yelling about a " cash money "refund , not a refund to a cc card,  and generally made a fool of herself  and as a representative of your Office,  makes me seriously question the professionalism she must lack in the work place if this is her "off duty" behavior.  Approaching a business establishment , in squad car/suv, in full uniform and then using intimidation to bully a kid at a cash register is disgusting . She came across as unprofessional, power drunk,  uneducated ( given the vulgar vocabulary and inability to speak proper English) and not at all what would be expected of an officer of the law  . Perhaps she was having a bad day. That doesn't excuse the fact that  when in uniform , be it police, military or emergency services, we should conduct ourselves as officers with a duty to the people , and to the office we serve.  . Please make her aware , as a uniformed member of the Police, we look to her and others like her to be professional, uphold the law ,  and conduct themselves frankly, better than the rest of us.   The young man on the receiving end of her  thuggish behavior was kind, polite and professional . Bullying, intimidating and using vulgarity while in uniform over a non-work related issue  borders on abuse of power.  I trust you will hear my concerns and address as appropriate.

Thank you for your time

Emma Lipinski

Beaufort County Sheriff's Office
Office of Professional Responsibility
CONFIDENTIAL - DO NOT COPY
Unless Authorized by the Chief Deputy

Certified to be a true and correct
copy of the original document on file with
the Office of Sheriff for Beaufort County.

Chief Deputy, Beaufort County Sheriff's Office

Certified to be a true and correct
copy of the original document on file with
the Office of Sheriff for Beaufort County.

Chief Deputy, Beaufort County Sheriff

**EXHIBIT 4**

## Baird, Brian

| | |
|---|---|
| **From:** | Baird, Brian |
| **Sent:** | Tuesday, August 08, 2017 8:08 AM |
| **To:** | 'fort32@atmc.net' |
| **Subject:** | IA Investigation |

Ms. Lipinski,

    I am Lt. Brian Baird of the Beaufort County Sheriff's Office; I investigate Citizen's Complaints against BCSO personnel for Sheriff P. J. Tanner. I wanted to thank you for taking the time to E-Mail us about the unfortunate incident you observed. Without people like you being willing to inform us of such behavior we would not know of such an incident. I just wanted to confirm the receipt of your E-Mail and inform you we have initiated an appropriate investigation into this. If you could provide me with you contact information for my file I would greatly appreciate it.

Thank you again

Brian Baird

Lieutenant Brian Baird
Special Investigator
Beaufort County Sheriff's Office
2001 Duke Street, Beaufort, SC
Office: 843-255-3405
Fax:    843-255-9469



Beaufort County Sheriff Office
Office of Professional Responsibility
CONFIDENTIAL - DO NOT COPY
Unless Authorized by the Chief Deputy

Certified to be a true and correct
copy of the original document on file with
the Office of Sheriff for Beaufort County.

Michael M. Hatfield
Chief Deputy, Beaufort County Sheriff's Office

Certified to be a true and correct
copy of the original document on file with
the Office of Sheriff for Beaufort County.

Chief Deputy, Beaufort County Sheriff's Office

**EXHIBIT 5**

OPR # _I-17004_
UCR # _____

# Beaufort County Sheriff's Office
## Office of Professional Responsibility Warning (Subject)

_Sgt. Selina Nelson_____. This is to inform you that you are the
(Employee's printed last name, first name & middle initial)
subject of a complaint and/or allegation of a violation(s) of Beaufort County Sheriff's Office Policies and Procedures.

An Administrative investigation / inquiry has been initiated by the Office of Profession Responsibility, Beaufort County Sheriff's Office, at the direction of the Sheriff or his designee.

The alleged violation(s) occurred on or about _July 31, 2017_____.

The fact that an investigation / inquiry exists does not mean that any policies or procedures were violated; members of the Sheriff's Office are presumed innocent of every allegation unless an investigation / inquiry discloses otherwise.

You will be ordered to appear, by an Internal Affairs Investigator, to give a truthful and complete statement about matters strictly and narrowly related to your official duties and fitness for duty, If you comply with such order, nothing you say can be used against you in any later criminal proceedings. However, the Beaufort County Sheriff's Office can use these statements against you for administrative purposes.  If you refuse to obey the order to appear or the order to give a truthful and complete statement or refuse to obey any lawful order, you can be subjected to internal discipline, including termination from the Sheriff's Office. The Beaufort County Sheriff's Office is not requiring you to waive your rights under the Fifth Amendment to the United State Constitution (as made applicable to local Governments).

You are ordered to keep this matter confidential and only discuss it with the assigned investigator or authorized person(s).  You are specifically prohibited from contacting complainants or witnesses inside or outside the Sheriff's Office in any manner.

Should you have any questions regarding this allegation, Investigator _H. Baird._____ has been assigned to this case.

## ACKNOWLEDGEMENT

I have read the above notice and understand the contents as stated herein. _SDN_____
(Employee's Initials)

_Selina D. Nelson_____
(Employee's Signature)

_Heron Baird_____
(Witness)

_08-8-2017_
(Date)

_8-8-2017_
(Date)

**EXHIBIT 6**

Certified to be a true and correct
copy of the original document on file with
the Office of Sheriff for Beaufort County.

Chief Deputy, Beaufort County

Date Aug 08, 2017    Page No. 1

**STATEMENT OF:**

Name: Selena D. Nelson    DOB:_____ H:_____

Add:_____ SSN:_____ C:_____

W:_____

I spoke with the sales clerk at Oreck who contacted me and advised that my product which was purchased on 7-19-2017 was not going to be covered under warranty. While speaking with him on the teleph, I said to him that since my product was purchased on 7-19-2017 it's within the 30 Days to return any item without any issues. At that point on the telephone while at my house I advised him that I would just like to get my money back. The sales clerk advised that each he would refund me for the product. I advised him that I would stop by to pick up my refund before going into work. I arrived at the business and waited for him to come to the front of the store. Once we were face to face I asked him did he attempted to get me a new product at which time he said, "No". During that time I asked about a different product which was on display. The product cost just a little more than the one I purchased but the product was not available at the store. During our conversation I said to him, "Well I'll just get my refund and attempt to locate the product at a different location. Other customers came into the business so I stepped aside to allow him (the sales clerk) to deal with the other customers. After the customers left the business the sales clerk and I started our conversation back. The sales clerk advised he had to look up the purchase to give me a refund, which he did. The sales clerk stated he could only apply the refund to my debit card. I took out my phone and showed him that on the same day of the purchase the funds were removed / taken out of my account and that I would like to please have cash back. I said to him sir could you please just refund me cash. The sales clerk first stated he did not have enough cash for the refund. At that time I asked him who was the manger and he said Lindsey. The sales clerk attempted to contact Lindsey and was unable to get her on the telephone. I asked the clerk for her telephone number, which he provided to me. I spoke with her in reference to that was taken place. Lindsey advised me that the clerk was not by her to do the right thing and to refund me cash back. Prior to me going to

Date 8-8-2017                    Page No. 2

## STATEMENT OF:

Name: Selena Nelson     DOB:_____     H:_____

Add:_____     SSN:_____     C:_____

                                    W:_____

the store, when I observed a strange alert on my product I contacted
Lindsey and ask her what it meant. She advised that it was an
internal issue and that I would need to take the product back to
the store. As I spoke with her she advised that it would be no problem
for a cash refund or for a new product. As I was on the phone with
Lindsey inside the store she advised (As the manager) that I could
get cash back since I purchase two of the same products estimated
cost of $637.00. I handed my phone to the sales clerk for him to
speak with his manager, I am unsure what was said. When I got
my phone back Lindsey said she advised the clerk to do the right
thing. I hung up with Lindsey and waited for the sales clerk to
proceed with the transaction. The sales clerk stated he was not
going to give me a full cash refund of 317,00 due to not having enough
cash on hand. Several times before he made a second telephone call I
said to the sales clerk " Sir would you please just give me my cash
back. He just looked at me and sat on a stool. I said again " Sir all I'm
asking from you is to refund my money so I can go. The sales clerk
got on the telephone and walked to the back of the business. I am unsure
who he was talking to or what was said. The sales clerk later returned
and said his finance guy was on the phone. I advised him that I did
not want to speak with a finance person. The sales clerk then said it was
the owner on the phone so I did speak with the owner in a nice/calm
manner and the entire time was acknowledge him as Sir. The owner said since
I purchased two items the sale clerk was instructed by him to give me a
cash refund. I said thank you Sir and ended the conversation. The sales
clerk proceeded to take cash from the drawer, counted it in front of me
and I counted it behind him. He handed me my cash and I started
out the door. He Yelled and said you not going to sign - not one time
did he advised me while I was at the counter that I needed to

Date _Aug 8, 2017_        Page No. _____

**STATEMENT OF:**

Name: Selena Nelson        DOB:_____    H:_____

Add:_____    SSN:_____    C:_____

W:_____

Sign any paper work. I continued to walk out of the business but before I left I advised him that I was bringing the other product back as well, while I was inside the business I was upset but at no time did I called the salesman an "Ass". I just remained cool as I was talking to him and he may have felt that I was speaking loudly when I said Sir could you please just give me my money so I could go. I never chant I want my money, I want my money, I want my money, I asked him nicely and repeatedly several times as he just looked at me wasting time. I at no time In front of any customer yelled at the clerk or called him an "Ass", I did not use the word Ass toward him or while any one was inside the business. @

Further Information: I recieved a telephone call from MSGT Faucet advising me that Capt. Woodward wanted me to contact him, I spoke with my capt. and he asked me what occurred at the Vawa store I advised him of the incident. Captain Woodward stated okay and that per the Sheriff do not return to the sta. I said. okay. Before MSGT called me I was asleep woke up and observed three missed call that's what prompt me to call him. I also observed a missed call from Lindsey and I call her back. She stated she was calling to tell me that she was attempting to make the situation right and that she could help locate me another Cia purfiner. I said to her it was okay and that she did not have to bother herself with assisting me any further due to her boss contacting my job. She Lindsey started apologizing to me for everything saying how sorry she was. She went on to say that the company was not doing well and she was asked to be removed from the Bluffton Ortek Store. I thanked her for everything and did and told her I was not going to be bothered with that business any more. Lindsey said if I needed anything in the future that I could come to the Savannah location. I said NO I'm done. Again she apologized and said it was

Date _Aug 08, 2017_    Page No. _4_

**STATEMENT OF:**

Name: _Selma Nelson_    DOB:_____    H:_____

Add:_____    SSN:_____    C:_____

W:_____

not right, I advised her that I got direct orders which I have to follow. Again she said if there was anything she could do for me to let her know. I just said to her that I contacted her while I was at the business to get my refund and if she wanted to contact any one at the Sheriffs office (Capt Woodward) to please feel free. Lindsey asked me for Capt. Woodwards telephone number. At that time I ended my conversation with her. Since then I had no futher contact with her and never knew of her before purchasing my first product,

_Selma D. Nelson_

Beaufort County Sheriff's Office
Office of Professional Responsibility
CONFIDENTIAL - DO NOT COPY
Unless Authorized by the Chief Deputy

Certified to be a true and correct
copy of the original document on file with
the Clerk of Court for Beaufort County.

Chief Deputy, Beaufort County

Certified to be a true and correct
copy of the original document on file with
the Office of Sheriff for Beaufort County.

Chief Deputy, Beaufort County

**EXHIBIT 7**

Date _Aug 08, 2017_                    Page No. _1_

**STATEMENT OF:**

Name: _Selena D. Nelson_          DOB:_____   H:_____

Add:_____   SSN:_____   C:_____

                                                    W:_____

I spoke with the sales clerk at Orech who contacted me and advised that my product which was purchased on 7-19-2017 was not going to be covered under warranty. While speaking with him on the telephone I said to him that since my product was purchased on 7-19-2017 it's within the 30 Days to return any item without any issues. At that point on the telephone while at my house I advised him that I would just like to get my money back. The sales clerk advised that ~~he~~ he would refund me for the product I advised him that I would stop by to pick up my refund before going into work. I arrived at the business and waited for him to come to the front of the store. Once we were face to face I asked him did he attempted to get me a new product at which time he said, "No". During that time I asked about a different product which was on display. The product cost just a little more than the one I purchased but the product was not available at the store. During our conversation I said to him, "well I'll just get my refund and attempt to locate the product at a different location. Other customers came into the business so I stepped aside to allow him (the sales clerk) to deal with the other customers. After the customers left the business the sales clerk and I started our conversation back. The sales clerk advised he had to look up the purchase to give me a refund, which he did. The sales clerk stated he could only apply the refund to my debit card. I took out my phone and showed him that on the same day of the purchase the funds were removed/taken out of my account and that I would like to please have cash back. I said to him sir _I advised him there was no policy or anything printed on the receipt stating I could not get cash back._ could you please just refund me cash. The sales clerk first stated he did not have enough cash for the refund. At that time I asked him who was the manager and he said Lindsey. The sales clerk attempted to contact Lindsey and was unable to get her on the telephone. I asked the clerk for Lindsey telephone number, which he provided to me. I spoke with her in reference to what was taken place. Lindsey advised me that the clerk was told by her to do the right thing and to refund me cash back. Prior to me going to

Certified to be a true and correct copy of the document on file in the Clerk of Court's Office, Charleston County, SC. CONFIDENTIAL - DO NOT COPY less authorized by the Court

Date 8-8-2017    Page No. 2

**STATEMENT OF:**

Name: Selena Nelson    DOB: _____    H: _____

Add: _____    SSN: _____    C: _____

W: _____

the store, when I observed a strange alert on my product I contacted Lindsey and ask her what it meant. She advised that it was an internal issue and that I would needed to take the product back to the store. As I spoke with her she advised that it would be no problem for a cash refund or for a new product. As I was on the phone with Lindsey inside the store she advised (As the manager) that I could get cash back since I purchase two of the same products estimated cost of $637.00. I handed my phone to the sales clerk for him to speak with his manager. I am unsure what was said. When I got my phone back Lindsey said she advised the clerk to do the right thing. I hung up with Lindsey and waited for the sales clerk to proceed with the transaction. The sales clerk stated he was not going to give me a full cash refund of 317.00 due to not having enough cash on hand. Several times before he made a second telephone call I said to the sales clerk " Sir would you please just give me my cash back. He just looked at me and sat on a stool. I said again " Sir all I'm asking from you is to refund my money so I can go. The sales clerk got on the telephone and walked to the back of the business. I am unsure who he was talking to or what was said. The sales clerk later returned and said his finance guy was on the phone. I advised him that I did not want to speak with a finance person. The sales clerk then said it was the owner on the phone so I did speak with the owner in a nice/calm manner and the entire time was acknowledge him as Sir. The owner said since I purchased two items the sale clerk was instructed by him to give me a cash refund. I said thank you Sir and ended the conversation. The sales clerk proceeded to take cash from the drawer, counted it in front of me and I counted it behind him. He handed me my cash and I walked out the door. He Yelled and said you not going to sign. At no time did he advised me while I was at the counter that I needed to

Certified to be a true and correct Office
the copy in possession of legal Responsibility
CONFIDENTIAL DO NOT COPY
Chief Deputy, Beaufort
Office of Professional Responsibility
Beaufort County Sheriff's Office
Unless Authorized by Chief

Date _Aug 8, 2017_     Page No. _____

**STATEMENT OF:**

Name: _Selena Nelson_     DOB:_____     H:_____

Add:_____     SSN:_____     C:_____

W:_____

Sign some paper work. I continued to walk out of the business but before I left I advised him that I was bringing the other product back as well, while I was inside the business I was upset but at no time did I called the salesman an "Ass". *or stated the word "Assi"* I just remained cool as I was talking to him and he may have felt that I was speaking loudly when I said Sir could you please just give me my money so I could go. I never chant I want my money, I want my money, I want my money, I asked him nicely and repeatedly several times as he just looked at me wasting time. I at no time In front of any customer Yelled at the clerk or called him an "Assi". I did not use the word Ass towards him or while any one was inside the business, *while speaking with him I did NOT SAY the word "ASS"*

Further Information: I recieved a telephone call from MSGT faucet advising me that Capt. Woodward wanted me to contact him, I spoke with my capt. and he asked me what occurred at the Vann store I advised him of the incident. Captain Woodward stated okay and that per the Sheriff do not return to the store. I said. Okay, Before MSGT called me I was asleep woke up and observed two missed call that's what prompt me to call him. I also observed a missed call from Lindsey and I call her back. She stated she was calling to tell me that She was attempting to make the situation right and that she could help locate me another Air purifier. I said to her it was okay and that she did not have to bother herself with assisting me any further due to her boss contacting my job, She Lindsey started apologizing to me for everything saying how sorry she was. She went on to say that the company was not doing well and she asked to be removed from the bluffton Oreck Store I thanked her for everything she did and told her I was not going to be bothered with that business any more. Lindsey said if I needed anything in the future that I could come to the Savannah location. I said NO I'm done, Again she apologized and said it was

**STATEMENT OF:**

Date _Aug 08, 2017_     Page No. _4_

Name: _Selena Nelson_     DOB: _____ H: _____

Add: _____     SSN: _____ C: _____

W: _____

not right. I advised her that I got direct orders which I have to follow. Again she said if there was anything she could do for me to let her know. I just said to her that I contacted her while I was at the business to get my refund and if she wanted to contact any one at the Sheriffs office (Capt Woodward) to please feel free. Lindsey asked me for Capt. Woodwards telephone number. At that time I ended my conversation with her. Since then I had no futher contact with her and never Knew of her before purchasing my first product.

While speaking with the manager Lindsey on the phone I do not recall saying the word "ASS"

_Selena D. Nelson_

On Aug 9, 2017 I reviewed my statement which is true and correct.

_Selena D. Nelson_

Beaufort County Sheriff's Office
Office of Professional Responsibility
CONFIDENTIAL — DO NOT COPY
Unless Authorized by the Chief Deputy

Certified to be a true and correct
copy of the original document on file with
the Office of Sheriff for Beaufort County.

Michael A. Hatfield
Chief Deputy, Beaufort County Sheriff's Office

**EXHIBIT 8**

Certified to be a true and correct copy of the original document on file with the Office of Sheriff for Beaufort County.

Chief Deputy, Beaufort County



# OFFICE OF SHERIFF
# BEAUFORT COUNTY
## POST OFFICE BOX 1758
## BEAUFORT, SOUTH CAROLINA 29901

**P. J. Tanner**
**Sheriff**

| AREA CODE (843) | |
|---|---|
| SHERIFF | 255-3200 |
| CHIEF DEPUTY | 255-3192 |
| CRIMINAL RECORDS | 255-3232 |
| CRIMINAL WARRANTS | 255-3228 |
| CIVIL RECORDS | 255-3188 |
| JUDGMENTS | 255-3189 |
| FAX # | 255-9405 |
| WEB SITE | www.bcso.net |

Date:        08/09/2017
Polygraph #: PN-17-014
Victim:      BCSO

## INVESTIGATIVE
## POLYGRAPH REPORT

I have been informed that the results of the polygraph examination administered to

**NELSON, SELENA**

by Examiner Brian M. Baird of the Beaufort County Sheriff's Office are as follows:

### DECEPTION INDICATED

Significant Reactions that are indicative of attempted deception were noted during the test.

**COMMENTS/REMARKS:**
This opinion should be considered a final report; however, all examinations undergo a Quality Control Review. Should this Quality Control Review change the results of this examination, you/your agency will be promptly notified by written report.

The following relevant questions were used in the Polygraph Examination.

(R5) Did you lie in that statement you wrote?    *Answer: No*

(R7) Did you lie in that statement you wrote for Lt. Baird?    *Answer: No*

_____ / _____ / _____
SIGNATURE OF OFFICER        AGENCY        DATE

Matthew E. Averill
Polygraph Examiner



*Beaufort County Sheriff's Office..."Dedicated, Professional Service."*

Certified to be a true and correct
copy of the original document on file with
the Office of Sheriff for Beaufort County.

Chief Deputy, Beaufort County Sheriff's Office

**EXHIBIT 9**



Certified to be a true and correct
copy of the original document on file with
the Office of Sheriff for Beaufort County.

Chief Deputy, Beaufort County Sheriff's Office

Certified to be a true and correct
copy of the original document on file with
the Office of Clerk for Beaufort County

Chief Deputy, Beaufort County Sheriff

**EXHIBIT** 10



**P. J. Tanner**
**Sheriff**

# OFFICE OF SHERIFF
## BEAUFORT COUNTY
POST OFFICE BOX 1758
BEAUFORT, SOUTH CAROLINA 29901

| AREA CODE (843) | |
|---|---|
| SHERIFF | 255-3200 |
| CHIEF DEPUTY | 255-3192 |
| CRIMINAL RECORDS | 255-3232 |
| CRIMINAL WARRANTS | 255-3228 |
| CIVIL RECORDS | 255-3188 |
| JUDGMENTS | 255-3189 |
| FAX # | 255-9405 |
| WEB SITE | www.bcso.net |

August 9, 2017

To:     Sergeant Selina Nelson
From:   Lieutenant Colonel Allen Horton

Subj:  Administrative Suspension

1. This is notification to you, that as of today, I am placing you on administrative suspension with pay pending the outcome of an administrative investigation. You are hereby ordered to ensure that your issued vehicle, credentials, radio, bullet proof vest and all weapons belonging to the Sheriff's Office are surrendered for safekeeping.

2. During this suspension period, you are not authorized to perform any duties or represent yourself as a Deputy Sheriff. This suspension shall remain in effect until such time the Sheriff authorizes your return to full duty.

Professionally,

Lieutenant Colonel Allen Horton
Enforcement Commander

I have received and understand this order.

Sergeant Selina Nelson
Date: _Aug 9, 2017_

Beaufort County Sheriff's Office
Office of Professional Responsibility
CONFIDENTIAL - DO NOT COPY
Unless Authorized by the Chief Deputy

Certified to be a true and correct copy of the original document on file with the Office of Sheriff for Beaufort County.

Chief Deputy, Beaufort County Sheriff's Office



*Beaufort County Sheriff's Office..."Dedicated, Professional Service."*

**EXHIBIT 11**

Certified to be a true and correct
copy of the original document on file with
the Office of the Sheriff for Beaufort County.

Chief Deputy, Beaufort County Sheriff's Office



Certified to be a true and correct
copy of the original document on file with
the Office of Sheriff for Beaufort County.

Chief Deputy, Beaufort County Sheriff's Office

**EXHIBIT 12**

Certified to be a true and correct
copy of the original document on file with
the Office of Sheriff for Beaufort County.

Chief Deputy Beaufort County Sheriff's Office



# BEAUFORT COUNTY SHERIFF'S OFFICE
# GENERAL ORDERS MANUAL

**Subject:** Code of Conduct
**Number:** 113A3          **Type:** Administrative                    **Pages:** 12
**Effective Date:** April 24, 2009          **Evaluation Date:** January 31, 2017
**References:** CALEA 1.2.2, 6.1.4abc, 26.1.1

## Purpose:

(CALEA 26.1.1)  It is the purpose of this policy to provide additional specificity to the standards of conduct embodied in the law enforcement officer's code of ethics and this agency's statement of values so that employees of this agency will better understand prohibitions and limitations pertaining to their conduct and activities while on and off duty.

The rules of conduct set forth in this policy are not intended to serve as an exhaustive treatment of requirements, limitations, or prohibitions on officer conduct and activities established by this agency. Rather, they are intended to (1) alert officers to some of the more sensitive and often problematic matters involved in police conduct and ethics; (2) specify, where possible, actions and inactions that are contrary to and that conflict with the duties and responsibilities of law enforcement officers, and (3) guide officers in conducting themselves and their affairs in a manner that reflects standards of deportment and professionalism as required of law enforcement officers. Additional guidance on matters of conduct is provided in regard to specific policies, procedures, and directives disseminated by this agency and from officers' immediate supervisors and commanders.

## Policy:

All employees of the Beaufort County Sheriff's Office must be fully aware of the ethical responsibilities of their positions and must constantly strive to live up to the highest possible standards of professional policing. To that end, the Beaufort County Sheriff's Office has adopted a Code of Conduct as a guideline for all sworn deputies, civilians and auxiliaries.   As employees of the Beaufort County Sheriff's Office we are held to a higher standard by the public and the community we serve and in the responsibilities we have sworn to uphold.  Therefore, it is the policy of this agency that employees conduct themselves at all times in a manner that reflects the ethical standards consistent with the rules contained in this policy and otherwise disseminated by this agency.

**Revised 05/25/2010:  format change and added employee dating policy.**
**Addition 02/10/2012: lottery prohibition**
**Addition 4/19/2016: Communications added**

## Procedures:

### A. **General Rules and Regulations:**

1.   Obedience to Laws, Regulations and Orders:

   a.   All employees of the Sheriff's Office will not violate any law or agency policy, rule or procedure.

   b.   (CALEA 26.1.1)  Employee will not engage in acts of corruption or bribery, nor will an employee condone such acts by other employees.

   c.   Employees who are arrested, cited, or come under investigation for any criminal offense in any jurisdiction will report this fact to a superior as soon as possible.

   d.   Employees will obey all lawful orders.

   e.   Employees will not engage in any conduct or activities on or off duty that reflect discredit on the Sheriff's Office or tend to bring this agency into disrepute, or impair efficient and effective operations.

   f.   Employees will cooperate fully in any internal investigation conducted by this agency or other authorized agency and will provide complete and accurate information in regard to any issue under investigation.

   g.   Employees that are working with other law enforcement agencies are responsible for adhering to the rules and regulations, policies and procedures of the Beaufort Sheriff's Office at all times.

   h.   Sworn personnel will not engage in gambling or betting on games of chance.  Additionally, this order prohibits sworn personnel from playing the South Carolina Lottery, on or off duty.  (South Carolina Attorney General's opinion dated January 7, 2002)

2.   Vehicle Operations:

   a.   (CALEA 26.1.1)   Every employee will operate county vehicles in accordance to the traffic laws of the state of South Carolina and the policies of this agency.

9:18-cv-02962-DCN    Date Filed 03/10/21    Entry Number 59-8    Page 67 of 76

113A13    Code of Cond.    Pg 3 of 12

    **b.**   It is the responsibility of the driver to ensure that all occupants are properly restrained in a safety belt and/or child seat.

**3.**   Abuse of Law Enforcement Powers or Position:

    **a.**   Employees will refuse to accept any gifts, presents, subscriptions, favors, gratuities, promises or anything else of value that may give the appearance of seeking to cause the employee to refrain from performing official responsibilities honestly and within the law.

    **b.**   Employees will not purchase, convert to their own use, or have any claim to any found, impounded, abandoned, or recovered property, or any property held or released as evidence.

    **c.**   Employees will not solicit or accept contributions for this agency or for any other agency, organization, event or cause without the express consent of the Chief Deputy or the Sheriff.

    **d.**   (CALEA 6.1.4abc) Employees are prohibited from using information gained through their position as an employee of the Sheriff's Office to advance financially or in any other reward for themselves or others.

    **e.**   Employees who are planning to initiate any legal action from acts performed under color of authority will inform their commanding officer.

**4.**   Off Duty Police Actions:

    **a.**   Deputies will not use their police powers to resolve personal grievances (e.g. involving the deputy, family members, relatives, or friends) except under circumstances that would justify the use of self-defense, actions to prevent injury to another person, or when a serious offense has been committed that would justify an arrest. In all other cases the deputy will summon on-duty law enforcement personnel and a supervisor in cases where there is personal involvement that would reasonably require law enforcement intervention.

    **b.**   Unless operating a marked patrol vehicle, off duty deputies will not arrest or issue citations or warnings to traffic violators on sight, except when the

Certified to be a true and correct copy

Beaufort County Sheriff's Office
Office of Professional Responsibility
CONFIDENTIAL - DO NOT COPY
Unless Authorized by the Chief Deputy

Chief Deputy

violation is so dangerous that the deputy would reasonably be expected to take appropriate action.

5.   Public Statements, Appearances, and Endorsements:

  a.   (CALEA 6.1.4abc) Employees will not under the color of authority make any public statement that could reasonably be interpreted as having an adverse effect upon the Sheriff's Office morale, discipline, operation of the agency, or the perception to the public.

  b.   (CALEA 6.1.4abc) Employees will not divulge or release any information gained by reason of their position, for anything other than its official, authorized purpose.

  c.   (CALEA 6.1.4abc) Unless expressly authorized employees will not make any statements, speeches, or appearances that could reasonably be considered to represent the views of the Sheriff's Office.

  d.   Sheriff's Office property including business supplies such as business cards, letterhead paper, envelopes, interoffice correspondence, etc,  that incorporate the Sheriff's Office insignia or logo are for official Sheriff's Office business only.  Employees are prohibited from using these products for personal use without the expressed authorization of the Sheriff or Chief Deputy.

  e.   Employees may not, under the color of law, endorse, recommend, or facilitate the sale of commercial products or services.  This includes but is not limited to the use of towing services, repair firms, attorneys, bail bondsmen, or other technical professional services.  This does not pertain to the endorsement of appropriate government services where there is a duty to make such endorsements.

  f.   (CALEA 6.1.4c) No employee of the Sheriff's Office will make any statement to the media except by established policy or with the permission of the Command Duty Officer or Command Staff.

6.   Political Activity:

  a.   Employees will be guided by state law regarding their participation and involvement in political activities.  Deputy Sheriffs are appointed and work

at the pleasure of the Sheriff and will not become involved in political activity without the consent of the Sheriff.

**b.**    Employees will not solicit political funds from any member of this agency or another government agency.

**c.**    Employees will not seek contributions, signatures, or other forms of support for any political candidates or parties while on duty or in uniform.

7.    Expectations of Privacy:

**a.**    Employees will not store personal information or belongings with agency records or files in such places as file cabinets, lockers, computers or similar areas which are under the control and management of this agency. Employees may store their personal information in a separate location in their work area.  Employees should be aware that these places may be inspected or otherwise entered to meet operational needs, internal investigation requirements, or for other reasons at the direction of the Chief Deputy or the Sheriff.

**b.**    No employee or volunteer of this agency will maintain files or duplicate copies of official files in either manual or electronic formats at his place of residence or in other locations outside the confines of this agency without the express permission of the Chief Deputy or the Sheriff.

8.    Accountability, Responsibility, and Discipline:

**a.**    Employees will promptly report for work, court and all appointments at their assigned times.

**b.**    (CALEA 26.1.1)  All personnel will obey the directives in General Order 212A1, Uniform General Order which directs grooming and uniform wear.

**c.**    Employees will not fabricate an illness or injury or deceive any official of the Sheriff's Office as to the conditions of their health or personal business for the purpose of being absent from their duties.

**d.**    Employees will be truthful and accept responsibility for their actions without attempting to conceal, divert, or diminish neither actual

...fied to be a true and correct copy of the original document on file with the Office of Professional Standards of the Beaufort County Sheriff's Office

Chief Deputy, Beaufort County Sheriff's Office

Beaufort County Sheriff's Office
Office of Professional Responsibility
CONFIDENTIAL - DO NOT COPY
Unless Authorized by the Chief Deputy

113A13    Code of Cond. .                                    Pg 6 of 12

> responsibility nor will they engage in efforts to impede, influence, or interfere with a criminal or internal investigation.

**e.**   No employee will leave their duty assignment until properly relieved.

**f.**   All employees will keep the Sheriff's Office informed of their current address and telephone number. When an employee's personal information changes the employee will immediately advise their supervisor who is responsible for making the proper notifications within the Sheriff's Office and Communications.

**g.**   Unless authorized by a supervisor, no employee of the Sheriff's Office will sleep at any time during their tour of duty, including break and meal periods.

**h.**   An employee will not permit any other person to use his/her badge, identification card, or credentials.

**i.**   (CALEA 26.1.1) Employees will use proper care in maintaining all of their equipment and will not convert any Sheriff's Office property to their own personal use, or have any claim directly or indirectly, to found property, recovered property, or property held as evidence without the permission of the Sheriff.

**j.**   Employees of the Sheriff's Office will promptly pay their debts and legal liabilities incurred by them and will immediately inform the Chief of Staff of any lawsuits or legal action initiated by them or against them. Employees facing financial hardship should request an appointment with the Chief of Staff to confidentially discuss the matter and seek assistance in working through the financial problem.

**9.**   (CALEA 26.1.1) Conduct Toward the Public:

**a.**   Employees will conduct themselves in a civil and professional manner that projects and supports public respect and cooperation.

**b.**   Employees will not recommend a specific attorney or bondsman to a person arrested by the Sheriff's Office.

    **c.**   All agency personnel will treat violators with respect and courtesy and will guard against an overbearing attitude or language that may belittle, ridicule, or intimidate the individual.

    **d.**   (CALEA 26.1.1)  While recognizing the need to demonstrate authority and control over criminal suspects and prisoners, deputies will adhere to this agency's use-of-force policy and will observe civil rights and protect those in their charge.

    **e.**   Employees will respond promptly and professionally to all citizen requests, calls for law enforcement services, administrative requests, and other requests for services.

    **f.**   (CALEA 26.1.1)  Deputies will not abuse their authority granted to them by the Sheriff and the State of South Carolina.

**10.**  Prohibited Associations and Establishments:

    **a.**   Employees will not knowingly visit, enter or frequent an establishment wherein the laws of the United States, the State of South Carolina, or the local jurisdiction are violated, except in the performance of duty or while acting under proper and specific orders.

    **b.**   Employees will not knowingly commence or maintain a relationship with a person who is under criminal investigation, indictment, arrest, or incarcerated by this or another police or criminal justice agency, and/or who has an open and notorious criminal reputation in the community except as necessary to the performance of official duties, or where unavoidable because of familiar or family relationships.

    **c.**   Employees will not knowingly join or participate in any organization that advocates, incites, or supports criminal acts or criminal conspiracies.

    **d.**   Deputies will not initiate a social or romantic relationship with the spouse or immediate family members of any person in custody or under investigation by this agency.

    **e.**   No employee will participate in an investigation or other Sheriff's Office business in which the employee, a member of an employee's immediate

Certified to be a true and correct copy of the original document
Beaufort County Sheriff's Office
Office of Professional Responsibility
CONFIDENTIAL - DO NOT COPY
Unless Authorized by the Chief Deputy
Chief Deputy, Beaufort County Sheriff's Office

9:18-cv-02962-DCN    Date Filed 03/10/21    Entry Number 59-8    Page 72 of 76

113A13    Code of Cond.                                                    Pg 8 of 12

family, or personal friend, is involved as a suspect, victim or a witness. The employee will immediately report any such situation to their supervisor.

**11.** Conduct Toward Fellow Employees:

   **a.**  (CALEA 26.1.1) Employees will not make false, vicious or malicious statements about employees of the Sheriff's Office to anyone. Employees will not make false statements to supervisors when questioned, interviewed, or in submitting statements or reports.

   **b.**  (CALEA 6.1.4abc) Employees assigned to the various administrative, operational, or support functions of this agency will exercise their duties and responsibilities confidentially on a "need to know basis."

   **c.**  All employees will conduct themselves in a manner that will foster cooperation among members of this agency, showing respect, courtesy and professionalism in all their dealings with one another.

   **d.**  Employees will not use language or engage in acts that demean, harass, or intimidate another person.

   **e.**  Employees are prohibited from dating one another if they are working on the same Team (shift) or one of the employees supervises the other employee.  Employees who enter into a personal relationship of dating each other will notify their supervision to ensure there is no conflict or to arrange duty transfers if in violation of agency policy.

**12.**  (CALEA 26.1.1)  Use of Alcohol and Drugs:

   **a.**  Employees will not consume any intoxicating beverage while on duty unless authorized by a supervisor in the line of duty.

   **b.**  Alcoholic beverages will not be consumed in the vehicles or allowed on the premises owned by the Sheriff's Office with the exception of the Sheriff's Camp.

   **c.**  Employees will not be under the influence of alcohol in a public place while off duty.

    **d.** No employee will report for duty with the odor of alcoholic beverage on his or her breath.

    **e.** No employee will report to work when his or her judgment or physical condition has been impaired by alcohol, medication or other substances.

    **f.** Supervisors will order a drug or alcohol screening test when they have reasonable suspicion that an employee is using drugs or alcohol while on duty. Such screening will conform to General Order 105A1, Drug and Alcohol Testing.

**13.** Arrests in Private Matters and Neighborhood Disputes:

    **a.** All deputy sheriffs shall be prohibited from taking any law enforcement action in private matters that directly concern them or members of their family.

    **b.** All deputy sheriffs shall further be prohibited from taking any law enforcement action or intentionally involving themselves in neighborhood disputes where they reside.

    **c.** From time to time situations may occur in the deputy sheriff's neighborhood while they deputy is on duty and they find themselves dispatched to the location. The deputy sheriff shall summon a supervisor or other competent deputy sheriff to take the lead role in the handling of the dispute. The other responding deputy sheriff shall be responsible for taking any law enforcement action required and the resident deputy sheriff shall remain in a back-up officer posture.

    **d.** This is not to prohibit the deputy sheriff from preventing serious bodily injury or death in some extraordinary circumstance that may be occurring in their neighborhood. Under these circumstances the deputy sheriff must do all in their power to prevent injury or death. Once safety has been established, the deputy sheriff shall summon the appropriate law enforcement agency having jurisdiction over the location and the crime.

**14.** Expectations of Privacy:

(CALEA 1.2.2a) As a governmental agency, the Sheriff's Office is subject to laws regarding public records. All records, correspondence, documents and

Certified to be a true and correct
copy of the original document on file in the
Office of Professional Responsibility
Beaufort County Sheriff's Office
CONFIDENTIAL - DO NOT COPY
Unless Authorized by the Chief Deputy
Chief Deputy, Beaufort County Sheriff's Office

other items produced by the agency and its employees are subject to public review. The Beaufort County Sheriff's Office falls within the authority of the South Carolina Freedom of Information Act; therefore all records are subject to public review unless specifically excluded in Section 30-4-30 of the Code of Laws of South Carolina (1976), as amended.

a.   (CALEA 1.2.2b) No employee of the Sheriff's Office will have any expectation of privacy when using mail, e-mail and other correspondence sent to or from the agency. All internet and e-mail usage will comply with the county's internet usage policy.

b.   (CALEA 1.2.2c) No employee of the Sheriff's Office will have any expectation of privacy when utilizing telephones, computers or faxes. All telephone and radio transmissions are subject to being recorded.

c.   (CALEA 1.2.2d) The use of any agency equipment/property or office material is restricted to official county business.

d.   (CALEA 1.2.2e) Lockers, if available, may be used to secure any work related personal property. However, the lockers will remain property of the agency and subject to search. The employee will be notified anytime his/her locker is searched.

## 15.  South Carolina Training Act:

In accordance with Regulation 38-016 of the South Carolina Training Act, a law enforcement officer shall have his or her law enforcement certification withdrawn by the Department (Academy) upon the occurrence of any one or more of the following Events:

a.   The officer is found to have deliberately falsified the application for certification and training upon which the officer was admitted for training while employed by his/her present, or any previous employer for which the officer exercised law enforcement powers in this state.

b.   The officer is found to be ineligible for service as a law enforcement officer because of his or her failure to meet prerequisite qualifications for training and certification, as set by law, even though such ineligibility is not discovered until after the officer's initial certification.

Beaufort County Sheriff's Office
Office of Professional Responsibility
CONFIDENTIAL - DO NOT COPY
Unless Authorized by the Chief Deputy

c.  The officer is convicted of a criminal offense under the law of any jurisdiction that would, by the laws of this state, disqualify the officer from obtainment of a certification as provided in R.38-007 and R.38-008.

d.  Evidence satisfactory to the Department of Public Safety that the officer has engaged in misconduct. For purposes of 38-016, misconduct means:

i)  Conviction, plea of guilty, plea of no contest or admission of guilt (regardless of withheld adjudication) to a felony, a crime punishable by a sentence of one year (regardless of the sentence actually imposed, if any), or a crime of moral turpitude.

ii)  Unlawful use of a controlled substance.

iii)  The repeated use of excessive force in dealing with the public and/or prisoners.

iv)  Dangerous and/or unsafe practices involving firearms, weapons, and/or vehicles which indicate either a willful disregard for the safety of persons or property.

v)  Physical or psychological abuses of members of the public and/or prisoners.

vi)  Misrepresentation of employment-related information.

vii)  Dishonesty with respect to his/her employer and/or

viii) Untruthfulness with respect to his/her employer.

ix)  Violations of criminal law resulting from administrative inquire.

16.  Regulation 38-017 of the South Carolina Training Act makes it the responsibility of the Sheriff to report to the Department (Academy) the occurrence of any event, or series of events, set forth in R38-16 which requires the withdrawal of certification of a law enforcement officer who is currently employed by the Sheriff.

17.  Federal law prohibits any individual from carrying a firearm, either privately or in connection with employment, if the employee has ever been or is ever

Certified to be a true and correct copy of the original document on file in the Beaufort County Sheriff's Office Office of Professional Responsibility CONFIDENTIAL - DO NOT COPY Unless Authorized by the Chief Deputy

Chief Deputy, Beaufort County Sheriff's Office

convicted of a misdemeanor crime of domestic violence. This prohibition also applies during any period when the employee is subject to a qualifying restraining order which prohibits harassment, stalking, threatening, or engaging in any conduct against an intimate partner or child that could be expected to cause bodily injury or which prohibits the use of force (attempted or threatened) against an intimate partner or child. A qualifying restraining order is one which must have been issued only after a hearing of which the employee must have had actual notice and an opportunity to participate, and the order must either prohibit harassment, stalking, threatening, or engaging in any conduct against an intimate partner or child that could be expected to cause bodily injury or prohibit the use of force (attempted or threatened) against an intimate partner or child. Any Sheriff's Office employee will immediately report any such conviction or restraining order to their immediate supervisor. The occurrence of such conviction or restraining order may, result in termination of employment.

**By Order Of:**

**P.J. Tanner**
**Sheriff**

Beaufort County Sheriff's Office
Office of Professional Responsibility
CONFIDENTIAL - DO NOT COPY
Unless Authorized by the Chief Deputy

Certified to be a true and correct copy of the original document on file with the Office of Sheriff for Beaufort County.

Chief Deputy, Beaufort County Sheriff's Office