March 22, 2018

Law Enforcement Training Council

Re:  Selena Nelson
     Case No.: 2017-CJA-08-10

Dear Training Council Members,

## STATEMENT OF THE CASE

On August 16, 2017, the South Carolina Criminal Justice Academy (CJA) received a PCS of Separation alleging misconduct for Selena Nelson from Beaufort County Sheriff's Office (BCSO). On September 12, 2017, CJA received a PCS of Hire for Selena Nelson from Bluffton Police Department (BPD).

Ms. Nelson appeared at the hearing and was represented by Benjamin T. Shelton, esquire. Brian Baird prosecuted the allegations for BCSO. Two witnesses testified: Brian Baird and Sheldon Epstein.

## STATEMENT OF FACTS

**Testimony of Brian Baird:**

He testified that he is a lieutenant with BCSO and works as a special investigator for the sheriff. BCSO received a complaint against Ms. Nelson on August 1, 2017. In particular, that Ms. Nelson was in a store, dressed in her BCSO uniform, and that she was yelling and using profanity.

Lt. Baird interviewed the parties then interviewed Ms. Nelson to determine if she was yelling in public and whether she used the word "ass." Prior to the interview, she was provided a copy of an Office of Professional Standards warning form. Ms. Nelson stated that she understood the form and the interview, which was recorded, began.

During the interview, He "advised her of - - the majority of the people that I deal with, the ones that have lost their job been for [sic] lying, not for what they did." Ms. Nelson denied raising her voice or using the word "ass." "Initially, she said she didn't call the clerk an ass. I told her I wasn't asking her that. I just wanted to know if she had used the word 'ass' at any point. And she said not toward the clerk... so then I explained the use of the word 'semantics' to her where she was, in my opinion, trying to, like, explain a way of using the word 'ass'. In the end, she said she adamantly denied ever using the word 'ass' in any way." Ms. Nelson "[c]ontinued to claim that it was a calm and polite conversation."

During her second interview, Lt. Baird "reminded her again that we're just talking about using the word 'ass' and not toward an individual and then focused her on her conversation on the phone. And eventually she laughed and said she remembered that she did use the word 'ass'. It wasn't in a derogatory manner but that she did use the word 'ass'." Based upon her admission "to finally using the word "ass', the interview was ended." Lt. Baird submitted his findings to the sheriff.

On cross-examination, Lt. Baird testified that he wrote an internal affairs report for this incident. He wrote the entire report, signed it, and submitted Chief Deputy Hatfield. He agreed that it is his job "to document any reports, accurate and factual information." This is important because his employer relies upon this report to make employment decisions.

Furthermore, he testified that he has been an investigator for 36 years and is familiar with proper investigative techniques. He prefers to speak with witnesses "in person so [he] can observe them." He wants to "see their reactions" as this can be helpful to determine truthfulness, credibility and any bias they might have. Additionally, you can ask a witness for their identification, if you

have never met them before. As a general rule, he does not perform a background check on a witness to determine whether they have been arrested or whether they have had encounters with the officer in the past.

Lt. Baird admitted that he never met with the complainant and has never met him before. During this investigation, he only spoke with the complainant via telephone, never in person. He admitted that he did not conduct an in-person interview with any individual regarding this complaint except Ms. Nelson.

Lt. Baird testified that the first interview of Ms. Nelson was approximately "two hours. Actual recorded time was two hours and 47 minutes. I believe she was in my office a total of three hours and maybe like 11, 17 minutes, something like that." However, he only interviewed all of the witnesses in about 25 minutes for all of their statements. Additionally, he admitted that he did not mention his conversation with one of the witnesses who informed him that "she did not hear Ms. Nelson use the word 'ass'." However, this witness was briefly mentioned in his summary. There was a paragraph for each of the other witnesses, in his report. Due to "an oversight" he did not mention the witness who did not hear Mr. Nelson use the word "ass." This witness also told Lt. Baird that she did not hear Ms. Nelson yell or become loud.

**Testimony of Sheldon Epstein:**

Captain Epstein works for Bluffton Police Department (BPD) and is second in command behind Chief Manning. BPD currently employs Ms. Nelson. Capt. Epstein testified that in his "opinion that Officer Nelson presents herself in a highly professional manner and performs her duties in a [sic] exemplary fashion. And to further that, there has been at least one letter that has been received since she's been a member of the Bluffton Police Department that complimented

the actions she took at an incident to which she was called within our jurisdiction."

Prior to hiring Ms. Nelson, BPD performed a background investigation on Ms. Nelson and was aware of allegations against Ms. Nelson.

On cross-examination, Capt. Epstein testified that Ms. Nelson completed an application, had an interview with Capt. Babkowitz, then had an interview with the Chief.

**Review of Exhibit #3**:

Exhibit #3 was a CD containing the first and second interview of Ms. Nelson. Certain objections were raised and sustained as to some of the material. As a result, the objectionable material was not considered as part of this Recommendation.

First Interview

At 9:12

Lt. Baird asked "Hang on a second. You're going to tell me you didn't raise your voice, you didn't start yelling 'I want cash', you didn't call him an 'ass'?"

Ms. Nelson stated "Oh no, sir."

At 10:49

Ms. Nelson stated that "at no time did I curse this gentleman and call him an ass."

At 11:06

Ms. Nelson stated "I would never do that in uniform Lt. Baird. I would not call this man an ass."

At 14:13

Ms. Nelson stated "Lt., I know better than to act in a certain way and call someone an ass."

At 14:42

    Ms. Nelson stated "I did not call him an ass."

At 14:53

    Ms. Nelson stated "I had no reason to call him an ass."

At 17:14

    Ms. Nelson said "I didn't call this gentleman an ass."

At 17:25

    Ms. Nelson stated "Lt., I didn't call him an ass."

At 17:35

    Lt. Baird stated "You may be hanging on a technicality and I don't want to see you lose a career over a technicality. If you used the word ass at any point. Whether you're calling yourself an ass. Whether you're calling someone else an ass. You are saying the word ass. If you used the word ass at any point when you were inside of that store what so ever, that is what I am asking."

    Ms. Nelson replied "Lt., I did not use the word ass."... "I didn't have the need to call him an ass."

At 25:39

    Ms. Nelson stated "the only thing I said I didn't do is use the word ass."

At 37:04

    Ms. Nelson stated "I know I didn't call him an ass."

At 2:1215

    Lt. Baird stated "he is saying you used the word ass... Did you ever say the word

ass inside [inaudible] period."

Ms. Nelson stated "I don't recall saying the word ass. I just don't recall saying the word ass."

At 2:18:12

Ms. Nelson stated "in front of no customer and at no time did I say the word ass. A-S-S, you understand?"

At 2:19:25

Ms. Nelson stated "I know I put in there that at no time I called him an ass."

At 2:20:10

Ms. Nelson stated "I never used the word ass."

Second Interview

At 4:28

Lt. Baird: "What this guy is saying. What he is saying is that while you were talking to Lindsey, you told Lindsey the reason I bought those two air purifiers because you sold your ass off."

Ms. Nelson: [audible laugh] "Well, um, yeah, I - I told her how great she was and like I said probably did say to her 'ass' but nothing derogatory for him. But I did tell her she sold her ass off."

Lt. Baird: "We spent three hours and 17 minutes yesterday talking."

Ms. Nelson: "I was so focused on him, Tyler."

Lt. Baird: "Do you want to know how many times I tried to direct you away from that yesterday?

Ms. Nelson: "Maybe a lot, but..."

Lt. Baird: "Repeatedly saying I'm not talking about saying it to him. I'm not saying you said it to him. He didn't say you said it to him. I repeatedly told you that."

Ms. Nelson: "Yeah, I gave Lindsey a great compliment."

At 6:30

Ms. Nelson: "I was just too focused on Tyler because of the situation, not on Lindsey because this was never an issue with Lindsey.

At 11;06

Ms. Nelson: "When you said it just now it clicked to me. Like I said, I was more focused when I came in here because I knew the issue was with the salesperson and not the manager. I was so focused on what I said to him and how I said it ... I was not focused on Lindsey at all."

## STANDARD OF REVIEW

"Substantial evidence is relevant evidence that, considering the record as a whole, a reasonable mind would accept to support an administrative agency's action." Trimmier v. S.C. Dep't of Labor, Licensing & Regulation, 405 S.C. 239, 246, 746 S.E.2d 491, 494 (Ct. App. 2013). The fact that the record, when considered as a whole, presents the possibility of drawing two inconsistent conclusions from the evidence does not prevent the agency's findings from being supported by substantial evidence. Waters v. S.C. Land Res. Conservation Comm'n, 321 S.C. 219, 226, 467 S.E.2d 913, 917 (1996).

## FINDINGS OF FACT

Based on the testimony of Brian Baird, Sheldon Epstein and exhibits entered into

evidence, I find as a fact:

1. Ms. Nelson was employed by BCSO at the time of the allegations of misconduct.
2. That a complaint was filed against Ms. Nelson that she was in uniform, in public, yelling and using profanity, in particular the word ass.
3. The complaint was from the clerk present in the store the day of the allegations.
4. That Ms. Nelson was interviewed for this incident two times.
5. That during the first interview, Ms. Nelson repeatedly denied that she called the clerk an ass or that she used the word ass while in the store.
6. That during the second interview she was told the specifics of the allegation. In particular, "What this guy is saying. What he is saying is that while you were talking to Lindsey, you told Lindsey the reason I bought those two air purifiers because you sold your ass off."
7. That once told the specifics of the allegation she, after an audible laugh, stated "[w]ell, um, yeah, I - I told her how great she was and like I said probably did say to her 'ass' but nothing derogatory for him. But I did tell her she sold her ass off."
8. That she explained that "I was just too focused on Tyler because of the situation, not on Lindsey because this was never an issue with Lindsey.
9. That she further explained that "[w]hen you said it just now it clicked to me. Like I said, I was more focused when I came in here because I knew the issue was with the salesperson and not the manager. I was so focused on what I said to him and how I said it ... I was not focused on Lindsey at all."
10. That although this is an exceptionally close case, it is unclear whether Ms. Nelson

was dishonest or whether she was focused on what she said to the clerk and not to Lindsey.

11. Therefore, it was not proven by the substantial evidence in the record that Ms. Nelson engaged in misconduct.

## CONCLUSIONS OF LAW

Based on the testimony of Brian Baird, Sheldon Epstein and exhibits entered into evidence, I conclude as a matter of law:

1. S.C. Code §23-23-80(6) allows the Law Enforcement Training Council to suspend, revoke, or restrict law enforcement certification in accordance with regulations promulgated by the Council.

2. S.C. Reg. 37-025 states in part:
   A. The Council may deny certification based on evidence satisfactory to the Council that the candidate has engaged in misconduct. For purposes of this section, misconduct means:
      6. Misrepresentation of employment-related information;
      7. Dishonesty with respect to his/her employer;

That pursuant to S.C. Reg. 37-025, Ms. Nelson did not engage in misconduct.

## RECOMMENDED SANCTION

Based on the facts developed during the contested case hearing, I recommend the Law Enforcement Training Council issue Ms. Nelson a law enforcement certification in South Carolina. However, because this case is so close, Ms. Nelson should be placed probation for two years. During that two years, Ms. Nelson is to complete 8 hours of ethics classes each year. Proof of the completion of these ethics classes will be submitted to CJA each year. If Ms. Nelson fails to complete this probationary period, then she will have her law enforcement certification permanently revoked.

Sincerely,

John Thomas, Director
Hearing Officer